OPINION OF THE COURT
Judy Harris Kluger, J.
The issue this court must address is whether pursuant to *887 CPL 30.30 (4) (c), the People are entitled to an exclusion of the period of time during which a bench warrant is being processed, i.e., the period from the court’s issuance of the bench warrant until the warrant reaches the precinct of the defendant’s residence.
BACKGROUND
The defendant was arrested on March 26, 1991 and charged with assault in the third degree (Penal Law § 120.00 [1]), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]), both class A misdemeanors, and harassment (Penal Law § 240.25 [1]), a violation. The defendant has moved pursuant to CPL 170.30 (1) (e) to dismiss this criminal action on the ground that his right to a speedy trial pursuant to CPL 30.30 has been denied.[1]
In this case, only one period is at issue. On June 21, defendant failed to appear and a bench warrant was ordered. The defendant returned to court on July 5 and stated that he was in the hospital on the date the warrant was issued. The People do not allege that a diligent search for the defendant was conducted during the period of time he was absent from court but rather assert that this time should be excluded because the bench warrant was being processed during this entire period.
APPLICABLE LAW
CPL 30.30 (4) (c) excludes from speedy trial calculation: "the period of delay resulting from the absence or unavailability [of the defendant] or, where the defendant is absent or unavailable and has either escaped from custody or has previously been released on bail or on his own recognizance, the period extending from the day the court issues a bench warrant pursuant to section 530.70 because of the defendant’s failure to appear in court when required, to the day the defendant subsequently appears in court pursuant to a bench warrant or voluntarily or otherwise. A defendant must be considered *888 absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence. A defendant must be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence”.
CPL 30.30 (4) (c) was amended in 1984.[2] This amendment generated great controversy on the issue of whether the amendment removed the People’s obligation to exercise due diligence to secure a defendant’s return following the issuance of a bench warrant. There was no clear appellate authority on the issue and the lower courts were sharply divided. (Compare, People v Rodriguez, 132 Misc 2d 1044 [Crim Ct, NY County 1986], with People v Surita, 137 Misc 2d 794 [Crim Ct, Bronx County 1987].)
In People v Quiles (— AD2d — [1991]), the First Department definitively ruled on this issue, and held that the only circumstance where due diligence need not be established is where a defendant may be deemed absent because his location is unknown and he is attempting to avoid prosecution.
In Quiles (supra), the defendant failed to appear on July 26, 1988 and a bench warrant was issued. It was conceded by the People that as of August 17, 1988, a criminal history search would have revealed to the District Attorney’s office that the defendant was known by an alias and had been known at an address other than the one provided by him in connection with his arrest. The court in Quiles found that the minimal attempts by the police to secure the defendant’s presence for trial between August 17, 1988 and his return to court on November 11, 1988 did not constitute due diligence.
parties’ contentions
The defense contends that the People must be charged with the 14-day period from June 21 until July 5 because a diligent search for the defendant would have revealed that he was *889 hospitalized at Metropolitan Hospital Center from June 21, the date the bench warrant was issued, until July 1. The defense maintains that this period cannot be excluded under CPL 30.30 (4) (c) since no search for the defendant was conducted at all.
It is the People’s position that a diligent search for a defendant who has absented himself from court cannot begin until certain initial steps involved in the processing of a bench warrant have been completed and that it is therefore unreasonable to begin to charge the People on the date the bench warrant is first issued.
In People v Quiles (supra), the court did not charge the People with the period of time from the issuance of the warrant on July 26 until August 17, the date the parties stipulated that a search would have revealed the address at which the defendant could be located. The People maintain that because the Quiles court did not charge the People with this time, Quiles implicitly stands for the proposition that the People are entitled to "start up” time or a grace period following the issuance of a bench warrant before due diligence need be demonstrated.
In further support of their position, the People have submitted an affidavit from Lt. Kenneth Gillespi of the Central Warrant Squad of the New York City Police Department. In the affidavit, Lt. Gillespi details the steps involved in the processing of a Criminal Court bench warrant as follows. Before a bench warrant physically reaches the Central Warrant Squad, court personnel must do the paperwork on the warrant and enter it into the CRIMS computer system. This step can take two to five days. On the day after processing in Criminal Court is completed, the warrant is hand delivered to the Central Warrant Squad at 49 Chambers Street. After receipt by the Central Warrant Squad, bench warrants are separated according to charge, issuing court, index number, then by borough and finally by precinct. This step takes approximately two days. The warrants are then entered into the Central Warrant Squad computer so that an indexing list can be printed out. Since only one indexing list is printed per week, depending on the date the warrant was issued, it can take between one day to one week for an index list containing the warrant to be printed. After the warrant data is entered into the computer, Central Warrant Squad staff members check back with the issuing court to determine if the defendant returned and also check with the Department of Corree *890 tian to determine if the defendant was incarcerated within the city at the time the warrant was issued. This step takes two to three days. After an index list has been printed, all the warrants are separated by the list according to precinct and placed in a separate basket for each precinct or command. (There are over 75 commands within New York City.) A messenger is then assigned to hand deliver the bench warrants to the resident precinct of the defendant. The messenger takes 10 commands a day only and warrants are delivered on a strict schedule of rotation. Therefore, based on the resident command of the defendant on the bench warrant and what day the messenger is scheduled to hand deliver the bench warrants to that particular command, this step alone could take more than two weeks. Once a command receives a bench warrant, the warrant officers in that command take action on the warrant. Based upon the above information, Lt. Gillespi concluded that it is highly unrealistic, in fact, impossible to expect a precinct warrant officer to take any action on a bench warrant in less than two to three weeks.
DISCUSSION
The court rejects the People’s argument that Quiles (supra) should be read to conclude that the People are entitled to an excludable grace period following the issuance of a warrant. The defendant in Quiles used an alias and had a different address than the one he provided at the time of his arrest. The parties in Quiles stipulated that it was only on August 17, 1988 that a criminal search would have revealed the address where the defendant could be found. Such is not the case here.
However, the court finds the information contained in Lt. Gillespi’s affidavit provides compelling support for the People’s argument that a reasonable period following the issuance of a bench warrant should be excluded due to the administrative delays inherent in the processing of a bench warrant. In his affidavit, Lt. Gillespi states that the Central Warrant Squad has handled approximately 80,000 bench warrants to date this year and processes approximately 350 bench warrants daily from Supreme and Criminal Court. As detailed in his affidavit, each bench warrant issued by the court must undergo several different processing steps involving both paperwork and physical transference before the warrant reaches the resident precinct of the defendant. These steps although time consuming are absolutely necessary. When considering the tremen *891 dous number of bench warrants issued by the court and the limited police resources, a two-to-three-week processing time for a bench warrant is not unreasonable.
While the People are required to demonstrate due diligence pursuant to CPL 30.30 (4) (c), this obligation cannot be viewed in a vacuum. A diligent search for a defendant who has absconded cannot be initiated until such time as a bench warrant reaches the precinct of a defendant’s residence. To charge the People with the time prior to this period while the warrant is being processed would be both unsound and unjust. This is especially true in cases where a defendant returns to court within a relatively short period following the issuance of the warrant. In such a case, a search for the defendant is a practical impossibility. Charging the People under such circumstances does not serve the intended purposes of CPL 30.30 and could encourage defendants to routinely miss court appearances.
The court finds that based upon the information provided in Lt. Gillespi’s affidavit, a bench warrant takes at least two weeks before it reaches a defendant’s resident precinct and a diligent search for the defendant can be initiated. In the instant case, the defendant returned to court 14 days after the bench warrant was issued, a period before which a search for the defendant could practically be commenced. This court finds in cases such as this where the defendant returns to court 14 days or less following the issuance of a bench warrant, the entire period must be excluded as the result of the administrative delay necessary in the processing of a bench warrant.
The remainder of the defendant’s speedy trial motion is decided as follows.
On March 26, 1991, the defendant was arraigned and the case was adjourned until April 16 to enable the People to obtain the supporting deposition necessary to convert the misdemeanor complaint into a jurisdictionally sufficient information. This 21-day period is charged to the People.
On April 16, the supporting deposition was filed and served, a motion schedule was set and the case was adjourned until May 28. This period is excluded. (CPL 30.30 [4] [a].)
On May 28, a Huntley/Mapp hearing was ordered and the case was adjourned until June 21. This period is excluded. (People v Green, 90 AD2d 705 [1st Dept 1982].)
On June 21, the defendant failed to appear and a bench *892 warrant was ordered. For the reasons previously set forth, the period from the issuance of the warrant until the defendant’s return to court on July 5 is excluded.
On July 5, the case was adjourned until August 8 for the previously ordered suppression hearings. The initial adjournment for hearings or trial following a defendant’s return on a bench warrant is excluded. (People v Degro, 141 Misc 2d 810 [Crim Ct, NY County 1988].)
On August 8, the People withdrew statement notice. The People were not ready for the Mapp hearing and the case was adjourned until September 6. This 29-day period is charged to the People.
On September 6, the People represented that they would not seek to introduce any physical evidence at a trial of the defendant. The People were not ready for trial and the case was adjourned until September 24. This 18-day period is charged to the People.
On September 24, the People were not ready for trial and the case was adjourned until October 8. This 14-day period is charged to the People.
On October 8, the defendant filed the instant motion. All subsequent time is excluded as being a direct result of the defendant’s motion. (CPL 30.30 [4] [a].)
The court finds that 82 days of chargeable delay have elapsed. The defendant’s motion to dismiss is accordingly denied.

. The People are required to announce their readiness for trial within 90 days of the commencement of a criminal action in which, as here, the defendant is charged with one or more class A misdemeanors. (CPL 30.30 [1] [b].) Once the defendant has alleged a delay of more than the permissible time, the People have the burden of demonstrating sufficient excludable time. (People v Santos, 68 NY2d 859 [1986]; People v Berkowitz, 50 NY2d 333 [1980].)

. Prior to the 1984 amendment CPL 30.30 (4) (c) read as follows:
"In computing the time within which the people must be ready for trial pursuant to subdivisions one and two, the following periods must be excluded * * *
"the period of delay resulting from the absence or unavailability of the defendant. A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence. A defendant must be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence”.