■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v FRANCISCO MARRIN, Respondent.—Order, Supreme Court, New

York County (Stephen G. Crane, J.), entered March 9, 1990, granting defendant's motion to dismiss an indictment for burglary in the second degree, pursuant to CPL 30.30, unanimously reversed, on the law and the facts and as a matter of discretion in the interest of justice, and the indictment is reinstated.

This case concerns the applicability of the due diligence standard in locating an absent defendant once the speedy trial clock has started. It also raises the factual issue of whether the investigative effort here met the test of due diligence.

Defendant was given a desk appearance ticket in July 1987, charging him with misdemeanor possession of stolen property. When he failed to appear on the return date, a warrant was issued for his arrest. Shortly thereafter, on the same set of facts, defendant was indicted for burglary in the second degree. Upon the filing of this indictment on September 10, 1987, another arrest warrant was issued. The warrant squad received the process on October 9 and began a fruitless search which included four days of investigative leads conducted over the next ten months. These leads included review of defendant's rap sheet, interviews with his relatives and the complainant, visits to defendant's last known residence, surveillance of his known haunts, and reviews of records at the telephone company, the post office and the Departments of Correction and Motor Vehicles.

Defendant was finally returned to court on October 3, 1989, after his arrest in Bronx County on an unrelated matter. The People announced readiness for trial on March 7, 1990. Two days later, Criminal Term dismissed the indictment on speedy trial grounds. The court rejected the People's argument for exclusion of so much of the delay, under CPL 30.30 (4) (c), as would bring the case within the six-month time limitation of CPL 30.30 (1) (a). That rejection was based on the court's reasoning that no bench warrant, as defined in CPL 1.20 (30) —i.e., process issuing *after* a defendant's initial arraignment "upon the accusatory instrument by which the action was commenced"—had formally been issued. However, the definition of a "bench warrant" is irrelevant in this circumstance.

Prior to 1984, a period of delay resulting from a defendant's absence was excludable, for speedy trial purposes, where a) the defendant's location was unknown and he was attempting to avoid apprehension or prosecution, or b) his location could not be determined by due diligence. In 1984, CPL 30.30 (4) (c) was amended to provide alternatively that where a defendant

absents himself by escape from custody or failure to return to court while on bail or on his own recognizance *and* a bench warrant is thereby issued, the period from issuance of the warrant until return to court is excluded. This amendment, by providing an additional alternative, did not mandate that all exclusions related to a defendant's absence were solely dependent upon issuance of a bench warrant. And since a formal bench warrant had not been issued, the amended alternative was never triggered. Therefore, any exclusion based on defendant's absence was necessarily dependent upon a showing either of unknown whereabouts coupled with his attempt to avoid apprehension/prosecution, or the failure of authorities to locate him despite a duly diligent search *(People v Rodriguez,* 180 AD2d 517, 518, *lv denied* 79 NY2d 1053).

After erroneously dismissing on the bench warrant alternative, Criminal Term academically considered the diligence of the warrant squad's effort, concluding that its activity from October 10, 1987 to August 8, 1988, encompassing the four days of investigative leads, would have been sufficient to toll the speedy trial clock for that period. However, the thirteen and one-half months that followed the last recorded date of investigative effort would not be excluded. We disagree.

Minimal attempts to locate a defendant and secure his presence in court will not satisfy the due diligence standard *(People v Quiles,* 176 AD2d 164). On the other hand, the police are not obligated to search for a defendant indefinitely, so long as they exhaust all reasonable investigative leads as to his whereabouts *(People v Garrett,* 171 AD2d 153, *lv denied* 79 NY2d 827). There is no indication that the authorities shirked their continuing obligation of due diligence. Indeed, having exhausted all investigative leads, they nevertheless made it clear to their contacts in the field that they would like to hear from them should any further information surface on defendant's whereabouts. We cannot conclude that the warrant squad's lack of formal investigative effort over the next thirteen and one-half months, prior to defendant's arrest in the Bronx, constituted lack of due diligence.

We would also exclude the 29 days from the filing of the indictment and issuance of the arrest warrant in September 1987 until the warrant squad's receipt of the warrant and commencement of its investigation, as reasonable administrative delay inherent in the processing of the warrant, rather than lack of due diligence *(People v Lewis,* 150 Misc 2d 886).

The due diligence standard should have been applied, and

furthermore, that standard was satisfied. The indictment should not have been dismissed. Concur—Wallach, J. P., Kupferman, Asch and Rubin, JJ.