OPINION OF THE COURT
Rena K. Uviller, J.
Speedy trial motions have become a Judge’s, if not a litigant’s, nightmare. The opaque language of CPL 30.30 resists clarification by judicial interpretation. What follows is yet another attempt to understand this misbegotten statute.
A warrant was outstanding against the defendant for a significant period of time which the People seek to exclude from speedy trial calculation. If the defendant was actively avoiding apprehension or prosecution during any portion of that time, were the People thereby relieved of the obligation to exercise due diligence in locating him? Defendant asserts that unless the People made efforts to find and produce him the time is chargeable to them, according to the recent Court of Appeals decision in People v Bolden (81 NY2d 146 [1993]). The People assert that an absconding defendant is not entitled to a speedy trial windfall. Although the facts of this case are somewhat idiosyncratic, they pose the question neatly.
FACTS
Defendant was arrested for robbery and arraigned in criminal court on October 17, 1992. The Grand Jury, however, initially declined to return a true bill; defendant was released from custody and the complaint was dismissed on October 26th. The next day he reported to his parole officer regarding a preexisting matter. (Defendant had been released from State prison three days prior to his arrest on the instant matter.) On the same date that he reported to parole, that is, on October 27th, the Grand Jury reconsidered the instant matter sua sponte and this time it voted an indictment.
A notice was sent to the address defendant had provided upon his arrest, directing him to appear for arraignment on December 10, 1992. He did not appear because by that time he was again in custody; he had been detained by his parole *175 officer when he reported to her for a scheduled visit on November 4th. The parole violation included, inter alia, the events underlying the instant robbery indictment. Unaware that defendant was in parole custody, I issued a warrant for him when he failed to appear for arraignment on December 10th.
Defendant remained in parole custody until January 22, 1993, when his habeas corpus writ was granted for reasons irrelevant to this decision. Upon his release, he promptly made an "arrival report” to his parole officer. From then until March 24, 1993, defendant reported weekly, advising his parole officer in February that he had moved to Dean Street in Brooklyn and providing her with the phone number.
During this period of his regular reporting, the parole officer inquired as to the status of the instant case and defendant replied that "It’s finished, I don’t have an indictment.” Although the parole officer had been advised to the contrary by the Assistant District Attorney assigned to this case, she accepted defendant’s representation and apparently remained unaware that there was an outstanding warrant for him.
On March 25, 1993, defendant was arrested for petit larceny and was issued a desk appearance ticket; the warrant I had issued on December 10th did not fall.
Defendant failed to appear for his next scheduled parole appointment on March 31st. Someone purporting to be his relative telephoned a parole supervisor to advise that defendant was not reporting for fear he would be violated for the March 25th arrest. The parole officer made two phone calls to the number defendant had provided but left no message on an answering machine. She made no other effort to contact him.
On April 24, 1993, defendant was again arrested, this time for burglary. Upon that arrest he gave a different Brooklyn address. At that time the warrant on the instant matter fell and defendant was returned to court on April 25, 1993.
During the entire six-month period from October 26, 1992 (when the original felony complaint was dismissed and defendant was initially released from custody) until April 25, 1993, when he was returned on the warrant I issued, the assigned Assistant District Attorney was unaware of defendant’s whereabouts and made no effort to find him. She was unaware of his 2[1]A-month incarceration for the parole violation. Nor was she aware of his whereabouts after his release from parole custody, even while he was reporting regularly to his *176 parole officer. The only action the Assistant District Attorney took during this six-month period was to advise defendant’s parole officer (who apparently ignored the information) and defendant’s then lawyer that the Grand Jury had reconsidered and returned an indictment.
LAW
Preliminarily, the People claim that they were not required to look for defendant during the period of his parole incarceration — or more specifically, from the issuance of the warrant on December 10, 1992, until January 22, 1993, when defendant was released from parole custody. They assert that they did not know the defendant was incarcerated and were entitled to rely on the court’s mistaken representation, upon the issuance of the warrant, that he was at liberty; that because they were misled by the court’s error, they were thereby relieved of any obligation to locate or produce him during that time.
The claim is without merit. A defendant incarcerated within the State and who is using neither a false name nor NICID number is neither "absent” nor "unavailable” as those terms are defined in CPL 30.30. The People are in a singularly good position to locate and produce him. (See, e.g., People v Barasso, 193 AD2d 448; People v Davis, 184 AD2d 575.) Their claim that they were relieved from any obligation to do so because I mistakenly believed he was at liberty and/or because a warrant had been issued, is without support in the statute or case law. The 43 days of his confinement time is includable.
The open question is whether the People were obliged to look for the defendant after he was released from custody, that is, after January 22, 1993, when the parole hold was lifted. Posed another way, can this defendant, during any portion of the time he was at liberty and the warrant was outstanding, be deemed to have been "absent” or "unavailable” as defined by CPL 30.30. For only if he was "absent” or "unavailable” does the statute exclude the time from speedy trial calculation.[1]
*177 The People do not claim that defendant was "unavailable” after his release from custody.[2] But was he "absent?” Piercing the statute’s opaqueness, a defendant is "absent” pursuant to CPL 30.30 (4) (c), when his location is unknown and either of two separate and distinct conditions prevail: either the People’s due diligence was unavailing in locating him, OR he was attempting to avoid apprehension or prosecution.
The plain language of the statute thus provides that the accused may be deemed "absent” and the time excludable even if no efforts are expended in looking for him if he is actively dodging the authorities. On the other hand, if he is not hiding then he may be deemed "absent” only if the People tried, but were unable, to find him. Since the People in this case never made any effort to locate defendant, can he be deemed to have been "absent” in the former sense, that is, because he was eluding apprehension?
Notwithstanding the express distinction between the two kinds of statutory "absence,” the defendant relies on the Court of Appeals decision in People v Bolden (81 NY2d 146 [1993], supra) for the proposition that the People must exercise due diligence even if the defendant was actively eluding them; that since the People made no effort to locate him, the entire period during which he was at liberty and the warrant was outstanding must be included in section 30.30 calculations. The defendant’s reading of Bolden is too broad.
The Court of Appeals task in Bolden (supra) was to resolve a conflict between the First and Second Departments regarding the effect of a 1984 amendment to the speedy trial statute — an amendment which expanded the scope of excluded time to cover the period during which a warrant was outstanding. In People v Quiles (176 AD2d 164), the People had argued to the *178 First Department that the amendment was designed to relieve them of any obligation to look for a defendant who had jumped bail; that the time was automatically excluded from speedy trial calculation for the duration of a pending warrant.
Rejecting that argument, the First Department concluded that the 1984 amendment did not automatically stop the speedy trial clock just because a warrant had been issued. It held that since Quiles’ location was concededly known or should have been known, he could not be considered "absent” (or "unavailable”) pursuant to CPL 30.30 unless the People had made efforts to produce or locate him. Significantly, however, the Court did observe that "[t]he only circumstance where due diligence need not be established is where defendant may be deemed absent because * * * he is attempting to avoid apprehension or prosecution.” (People v Quiles, 176 AD2d 164, 165, supra [emphasis added].)
The Second Department interpreted the 1984 amendment differently. Expressly rejecting the reasoning of Quiles (supra), it held that the amendment did absolve the People from any obligation whenever a warrant is outstanding; that the time is automatically excluded from section 30.30 calculation because an absconding defendant may not invoke speedy trial protections. (People v Bolden, 174 AD2d 111.) The defendant’s status as "absent” or "unavailable” thus was not addressed by the Second Department; whether he was avoiding apprehension was not litigated and whether his location was known was apparently irrelevant to that Court’s decision. (See, People v Bolden, 81 NY2d 146, supra.)
On appeal, the Court of Appeals rejected the Second Department’s sweeping analysis of the amendment. (People v Bolden, 81 NY2d 146, supra.) It concluded that the purpose of the 1984 amendment was not to absolve the People from all responsibility regarding an absconding defendant and that the issuance of a warrant did not automatically stop the speedy trial clock. Rather, the amendment’s more limited design was to overrule People v Sturgis (38 NY2d 625) which had required the People to demonstrate a causative relationship between the defendant’s absence and their delay; that the quid pro quo demanded by the amendment was that the People had to obtain a bench warrant in order to avail themselves of the relaxed burden of proof. (People v Bolden, supra, at 154.) The Court expressly held that the preamendment definitions of "absent” and "unavailable” were still viable; that even if a warrant had issued, the period of its pendency was not excluded from *179 speedy trial calculation unless the defendant could be considered either "unavailable” or "absent” during that period. (People v Bolden, supra, at 151.)
Applying that reasoning to the case before it, the Court of Appeals reversed the dismissal of Bolden’s indictment because he had been neither "absent” nor "unavailable” while the warrant was outstanding. It held that since the People had not refuted defendant’s claim that his location was known, he could not be considered "absent” in the sense that due diligence would have been unavailing in finding him. Nor, the Court noted, "did they attempt to show that defendant * * * '[w]as attempting to avoid apprehension or prosecution,’ a circumstance that would not require a showing of due diligence under the literal terms of the statute. ” (People v Bolden, supra, at 155 [emphasis added].) Referring to the statutory definition of "absent” upon which the People rely in the instant case, that is, the definition which involves a defendant who "is attempting to avoid apprehension or prosecution,” Bolden pointedly observed: "Under the plain language of the statute as it existed both before and after the 1984 amendment, the quoted language constitutes a separate and independent ground for categorizing a defendant as 'absent,’ without regard to whether the People have exercised 'due diligence.’ ” (People v Bolden, 81 NY2d 146, 152, n 1.)
Thus, contrary to the defendant’s broad assertion in this case, the Court of Appeals did not bestow a speedy trial bonanza upon a ducking defendant. In plain terms, if the defendant is shown to have been eluding the authorities during the pendency of a warrant, that period will not be charged to the People; a finding that he was avoiding the authorities renders him "absent” even if the People have done nothing to look for him.
None of the post-Bolden cases relied on by defendant support a different conclusion. (People v Barasso, 193 AD2d 448 [1st Dept 1993], supra; People v Brunskill, 192 AD2d 666 [2d Dept 1993]; People v Wiggins, 194 AD2d 840 [3d Dept 1993].) Barasso and Wiggins involve incarcerated defendants. Given the resources and procedures available to the People to locate and produce persons in State or local custody, it is doubtful whether they may claim, except in special circumstances, that *180 an incarcerated defendant is ever "absent” under either of the alternative definitions of that term. In Brunskill, the defendant was regularly appearing in court on another matter during the pendency of the warrant, and could not reasonably be deemed to be avoiding apprehension.
Applying Bolden (supra) to the instant case, since the People never made any effort to locate the defendant after his release from parole custody, he was not "absent” in the sense that due diligence was unavailing in finding him. Was he nonetheless "absent” under that term’s alternative definition, that is, because he was avoiding apprehension or prosecution?
From the time of his release from parole custody on January 22, 1993, until March 24, 1993, defendant was reporting regularly to his parole officer. There is no evidence that he was not at the address he gave when paroled or at the new address he later provided in February. He cannot be said to have been eluding anyone during that period. Accordingly, the People are charged with the 61 days between January 22, 1993 and March 24, 1993.
It is apparent, however, that after his petit larceny arrest on March 25, 1993, defendant did attempt to avoid apprehension by the parole authorities. His failure to report for his next scheduled visit on March 31, 1993, the telephone call on his behalf indicating he feared he would be violated for that arrest, and his use of a different address upon his ultimate burglary arrest on April 24, 1993, all attest that the defendant was trying to elude his parole officer.
I find it of no significance that defendant was evading apprehension by the parole authorities rather than prosecution on the instant indictment.[3] In the face of his demonstrated attempt to avoid apprehension, he was clearly "absent” under the express language of the statute as well as the Court of Appeals interpretation in Bolden (supra). Accordingly, the days between March 25, 1993, when he first failed *181 to report to parole and April 24, 1993, when he was returned on the warrant are excluded.
In accordance with the foregoing, the People are charged with 158 days of delay and defendant’s motion to dismiss is denied.

. CPL 30.30 (4) provides in relevant part:
"In computing the time within which the people must be ready for trial pursuant to subdivisions one and two, the following periods must be excluded: * * *
"(c) the period of delay resulting from the absence or unavailability of the defendant or, where the defendant is absent or unavailable and has either *177 escaped from custody or has previously been released on bail or on his own recognizance, the period extending from the day the court issues a bench warrant * * * because of the defendant’s failure to appear in court when required, to the day the defendant subsequently appears in the court pursuant to a bench warrant or voluntarily or otherwise. A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence. A defendant must be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence.”

. An "unavailable” defendant is one whose location is known, but whose presence cannot be obtained by due diligence. Here, the People assert that while he was at liberty defendant’s whereabouts were unknown. Hence he was not "unavailable.”

. The defendant asserts that after the Grand Jury initially declined to indict him, he was ignorant of the subsequent true bill; that since he did not even know he had been indicted he cannot be said to have been avoiding prosecution or apprehension for this crime. His claim of ignorance is belied by the minutes of his parole hearing held on November 12, 1992, at which his attorney asserted his US Constitution Fifth Amendment privilege regarding the facts underlying the instant arrest because "the case may or may not be pending.”