■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTEL DAVIS, Appellant. [613 NYS2d 668] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Egitto, J.), rendered July 28, 1989, convicting him of criminal sale of a controlled substance in the third degree, criminal

possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the seventh degree, upon a jury verdict, and imposing sentence. By order of this Court dated June 8, 1992, the matter was remitted to the Supreme Court, Kings County, to hear and report on the defendant's speedy trial motion and the appeal was held in abeyance in the interim *(People v Davis,* 184 AD2d 575).

Ordered that the judgment is reversed, on the law, the defendant's speedy trial motion is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

At issue on this appeal are several periods of delay, the attribution of which is determinative of whether the defendant was denied a speedy trial. The People did not declare their readiness for trial until 270 days after the commencement of the action on August 16, 1987, thereby exceeding the six-month deadline by 86 days *(see, People v Davis, supra,* at 575). It was, therefore, incumbent on the People to demonstrate that at least 86 days were to be excluded from the speedy trial timetable; this, they failed to do.

Preliminarily, the People acknowledge that they are chargeable with 93 days of delay, from August 16, 1987, to November 17, 1987, including the period from the date of the filing of the indictment to the date of arraignment *(see, People v Correa,* 77 NY2d 930). The following seven-day period is excludable as it was the result of an adjournment at the defendant's request (CPL 30.30 [4] [b]). The remaining 170-day period from November 24, 1987, the date the Supreme Court ordered the issuance of a bench warrant because of the defendant's failure to appear, until May 12, 1988, when the People announced their readiness to proceed, is in dispute.

At the hearing conducted pursuant to this Court's order, the following pertinent facts were established both by stipulation and through the testimony of Sergeant Edward Valente of the Brooklyn Warrant Squad. On November 27, 1987, a bench warrant was issued for the defendant's arrest. The Central Warrant Unit (hereinafter CWU) received the warrant on December 3, 1987. Sergeant Valente explained that the CWU performs certain preliminary processing functions prior to assigning the warrant to a particular warrant squad which, in this case, occurred on January 14, 1988.

Sergeant Valente's efforts to locate the defendant commenced on January 25, 1988, when he checked the "dead file",

obtained an on-line booking system arrest report, and requested a criminal history from the Bureau of Criminal Investigation. Sergeant Valente also obtained the address and telephone number of the defendant's mother, with whom the defendant allegedly lived. He further discovered that the complainant in the case also lived at the same address as the defendant's mother and allegedly had the same telephone number. Despite being in possession of this information, Valente neither telephoned the defendant's mother nor attempted to confirm whether the defendant resided at that address. On January 26 and February 12, 1988, Sergeant Valente conducted routine checks to determine whether the defendant had been rearrested and the bench warrant executed.

On February 26, 1988, the defendant was arrested in Manhattan on an unrelated matter under the name Artel Gunther. On February 28, he was incarcerated at Rikers Island. On February 29, he appeared in Kings County Criminal Court in connection with his arrest on November 23, 1987, on misdemeanor charges.

On March 1, 1988, Sergeant Valente again checked the court computer and learned that the warrant was still active. He then contacted the Department of Correction and learned that the defendant had been arrested under the name Artel Gunther with the same NYSIS number. The defendant was finally produced in court on May 5, 1988.

In its decision, the hearing court focused solely on the 89-day period from November 27, 1987, the date the bench warrant was issued, to February 26, 1988, the date of the defendant's arrest. The court concluded that since "this warrant was processed in the ordinary and usual way", the People exercised due diligence, especially "in view of the volume of warrants being issued in the city". The court rejected the defendant's claim that the warrant officer's failure to telephone, visit, or write to the defendant's home constituted a lack of due diligence. In the alternative, the court ruled, that since the People had no knowledge of the defendant's whereabouts, they would not be charged with that period of delay. Accordingly, the court denied the defendant's speedy trial motion.

We conclude that only a portion of that 89-day period is excludable, and for reasons different from those enunciated by the hearing court. First, the three days from November 24, 1987, the date the warrant was ordered, to November 27, 1987, the date it was issued, are properly excludable "as

reasonable administrative delay inherent in the processing of the warrant" *(People v Marrin,* 187 AD2d 284, 286). The People, however, seek to extend the "reasonable administrative delay" exclusion to include the six-day period from November 27, 1987, the date the warrant was issued, to December 3, 1987, when the CWU received the warrant, and again, to the 42-day period from December 3, 1987, to January 14, 1988, when the Brooklyn Warrant Squad received the warrant from the CWU. In the absence of any detailed testimony as to the reasonableness of these delays, however, we conclude that only 35 days of this 48-day period is properly excludable "as reasonable administrative delay inherent in the processing of the warrant" *(see, People v Marrin, supra,* at 286; *People v Garrett,* 171 AD2d 153; *People v Lewis,* 150 Misc 2d 886). Accordingly, the People are chargeable with the remaining 13 days.

Turning now to the 43-day period from January 14, 1988, when the Brooklyn Warrant Squad received the warrant, until February 26, 1988, when the defendant was arrested on unrelated charges, the People argue that they are entitled to an exclusion because the defendant's location was unknown and he was attempting to avoid prosecution, and, in the alternative, that they exercised due diligence in their efforts to locate the defendant. The People are wrong on both points.

In *People v Bolden* (81 NY2d 146), the Court of Appeals clarified the effect of the 1984 amendment to CPL 30.30 (4) (c) regarding the People's duty to announce readiness in cases where the defendant is absent or unavailable, ruling that "prosecutorial diligence in locating the defendant and/or securing his presence must be shown in order to invoke the exclusion for periods when the defendant was 'absent' or 'unavailable' and a bench warrant for his apprehension was outstanding" *(People v Bolden, supra,* at 155). The Court noted, however, that where the People endeavor to show that "defendant's 'location [wa]s unknown and he [wa]s attempting to avoid apprehension or prosecution' ", they would not need to show due diligence "under the literal terms of the statute" *(People v Bolden, supra,* at 155).

The People's argument that they were not required to show due diligence as the defendant was attempting to avoid prosecution is unpersuasive in view of their failure to establish that the defendant's location was unknown. We reject outright their claim that they were under no obligation to check the defendant's last known address, at which, notably, the defendant claims to have been residing. In order to avail them-

selves of this exclusion, the People must expend the minimal effort of checking the defendant's last known address, in the absence of any information that he was not there, e.g., that he fled the jurisdiction *(see, People v Quiles,* 176 AD2d 164; *see, also, People v Delacruz,* 189 AD2d 717; *People v Jackson,* 142 AD2d 597; *but see, People v Neal,* 160 Misc 2d 173).

Nor may the People successfully invoke the exclusion of CPL 30.30 (4) (c) on the ground that they exercised due diligence. By sporadically conducting various computer checks while failing to check the defendant's last known address, the investigating officer did not "exhaust all reasonable investigative leads" as to the defendant's whereabouts *(People v Marrin, supra; see, People v Barasso,* 193 AD2d 448; *People v Quiles, supra; People v Peterson,* 115 AD2d 497).

We further note that the hearing court's consideration of the due diligence question in light of the "volume of warrants being issued in the city" is, as the *Bolden* Court observed, inappropriate, since the Legislature did not "contemplate that our law enforcement authorities would be relieved of their obligation to attempt to enforce judicially issued process because of the large number of outstanding bench warrants on the limited chance of success" *(People v Bolden, supra,* at 154). Accordingly, the People are chargeable with this 43-day period, bringing the number of days chargeable to the People to 149 of an allowable 184.

The following three-day period from February 26, 1988, to February 28, the date the defendant was incarcerated at Rikers Island, is excludable because the defendant was unidentifiable, having been arrested under an assumed name *(see, People v Brown,* 160 AD2d 256; *People v Taylor,* 124 AD2d 843).

The period subsequent to February 28, 1988, is, in view of our allocation of the time periods thus far, dispositive. For the eight-day period from February 29 until March 8, when Sergeant Valente discovered that the defendant was in the system, the People must be deemed to have had knowledge of the defendant's location inasmuch as the defendant appeared in Kings County Criminal Court on February 29 in connection with his misdemeanor case. For that period, as well as for the 56-day period from March 10, 1988, when the investigating officer lodged the warrant after discovering that the defendant was in the system, until May 5, 1988, when the defendant was produced in court, the People were required to show that they made "diligent and * * * reasonable efforts to obtain the presence of the defendant for trial" in order to invoke the

exclusion contained in CPL 30.30 (4) (e). Despite this requirement, and this Court's directive that "[a]t the hearing, the People should * * * have the opportunity to prove 'due diligence' with respect to the period of time following the defendant's incarceration" *(People v Davis, supra,* at 578), the People failed to adduce any evidence relating to their efforts to have the defendant produced. Hence, this 65-day period must be charged to the People *(see, People v Knight,* 163 AD2d 583; *People v Bryant,* 139 AD2d 750; *People v Wojciechowski,* 132 AD2d 586).

Since the total time chargeable to the People of 214 days exceeds the allowable 184-day period, the defendant's speedy trial motion must be granted, and the indictment dismissed. Mangano, P. J., Bracken and Santucci, JJ., concur.

Pizzuto, J., dissents and votes to affirm in the following memorandum: I cannot agree with the majority's conclusion that the 43-day period between January 14, 1988, and February 26, 1988, is not excludable under CPL 30.30 (4) (c), and thus is chargeable to the People.

CPL 30.30 (4) (c) permits exclusion from the time chargeable to the People, of "the period extending from the day the court issues a bench warrant * * * to the day the defendant subsequently appears in court" in situations "where the defendant is absent or unavailable and * * * has previously been released on bail or on his own recognizance". The statute further provides that "[a] defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence" (CPL 30.30 [4] [c]). In light of the plain statutory language, a showing of due diligence is not required when (1) the defendant's location is unknown and (2) the defendant is attempting to avoid apprehension or prosecution *(see, People v Bolden,* 81 NY2d 146, 152, n 1).

In the instant case, "the defendant's failure to appear for a scheduled court appearance on [November 24, 1987], 'strongly suggests an attempt to avoid * * * prosecution' *(People v Mitchell,* 106 AD2d 478; *People v Patterson,* 38 NY2d 623)" *(People v Jackson,* 150 AD2d 609, 610). Moreover, the fact that he used an alias upon his re-arrest on unrelated charges is itself evidence that he was seeking to avoid apprehension or prosecution *(see, People v Delacruz,* 189 AD2d 717, 718). Therefore, it is clear that the defendant was attempting to avoid apprehension during the 43-day period in question and the majority does not dispute the propriety of this conclusion.

However, the majority concludes that the defendant could not be considered absent under CPL 30.30 (4) (c) because the People failed to establish that his location was "unknown". I do not agree.

The majority, in reaching its conclusion, reasons that the defendant's location cannot be deemed "unknown" because the People never sent someone to personally investigate whether the defendant was in fact located at the address listed in his record. Indeed, the majority broadly states, without citation to precedential or legislative authority, that "[i]n order to avail themselves of this exclusion, the People must expend the minimal effort of checking the defendant's last known address, in the absence of any information that he was not there". It is my view that this interpretation constitutes a broad and wholly unwarranted expansion of the People's obligation under CPL 30.30 (4) (c). Under this standard, presumably, the People would be required to make an indeterminate number of visits to any address where there is reason to believe the defendant is located. If a fugitive has several possible addresses, certainly not an uncommon occurrence, the People would be required to investigate each address and, further, would presumably be required to return more than once to those addresses at which they received either an inadequate or no response. In effect, therefore, the statutory interpretation urged by the majority would require the People to demonstrate due diligence, or at least something akin to due diligence, even when the defendant is shown to have been avoiding apprehension or prosecution. I believe that to charge the People with the duty to search for a defendant who is attempting to avoid apprehension and/or prosecution runs contrary to the plain language of CPL 30.30 (4) (c), as well as the manner in which it has been construed (see, People v Bolden, supra, at 152, n 1).

A more reasonable reading of CPL 30.30 (4) (c) is to give a literal interpretation to the term "unknown". That is, a fugitive defendant's location should be deemed unknown unless the People have *actual* knowledge of his whereabouts. Knowledge of a defendant's location should not be imputed simply because the People are in possession of a possible address for him. Indeed, as the People point out, if such were the case, virtually every absconding defendant's location would be known since no defendant is released from custody without providing an address. Accordingly, I have concluded that absent the People's actual knowledge of a defendant's location, the mere fact that a defendant has opted not to

appear to answer criminal charges is sufficient, by itself, to deem his whereabouts "unknown".

This logic was recently embraced by the Supreme Court, New York County, which held that: "[T]he Court of Appeals did not bestow a speedy trial bonanza, upon a ducking defendant. In plain terms, if the defendant is shown to have been eluding the authorities during the pendency of a warrant, that period will not be charged to the People; a finding that he was avoiding the authorities renders him 'absent' even if the People have done nothing to look for him" (People v Neal, 160 Misc 2d 173, 179).

I believe the viewpoint espoused in People v Neal (supra), is in accord with the plain language employed by the Legislature (see, CPL 30.30 [4] [c]), and should be adopted here. That is, given the defendant's manifest attempt to avoid apprehension and prosecution in this matter, the People bear no burden of proving that he was not residing at the address listed in their records.

And finally, unlike my colleagues in the majority, I do not find notable the defendant's self-serving assertion that while he was a fugitive, he was residing at the subject address. Recently, in People v Walker (83 NY2d 455), the Court of Appeals determined that it was proper for the prosecution to cross-examine that defendant regarding his prior use of aliases and other false pedigree information. In so holding, Judge Titone stated: "Manifestly, a suspect's use of a false name or other inaccurate pedigree information is an indication of dishonesty that goes to the very heart of the question of that individual's testimonial credibility * * * Arrested individuals who use aliases, for example, often do so for the purpose of evading prosecution * * * [S]uch evidence is generally 'both relevant and material to the credibility, veracity and honesty' of the witness" (People v Walker, supra, at 461-462).

In sum, the fact that the People had a possible address for the defendant does not alter the fact that they did not actually know his location. Thus, since the People did not have actual knowledge of the defendant's location and since the defendant was attempting to avoid apprehension and/or prosecution, he was "absent" as such term is defined in CPL 30.30 (4) (c). Therefore, the 43 days between January 14, 1988 (i.e., the date the bench warrant was issued), and February 26, 1988 (i.e., the date on which the defendant was re-arrested under an alias), is excludable, and should not be chargeable to the People. Accordingly, the People are charged with 179 days

of delay and the defendant's motion to dismiss should be denied.