■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE TORRES, Appellant. [631 NYS2d 44] —Appeal by the defen-

dant from a judgment of the Supreme Court, Queens County (Demakos, J.), rendered November 23, 1992, convicting him of criminal possession of a controlled substance in the first degree, upon a jury trial verdict, and imposing sentence. By decision and order of this Court, dated December 5, 1994, the matter was remitted to the Supreme Court, Queens County, to hear and report on the defendant's speedy trial motion and the appeal was held in abeyance in the interim (People v Torres, 210 AD2d 270). The Supreme Court has now filed its report.

Ordered that the judgment is reversed, on the law, the defendant's speedy trial motion is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

The defendant was arrested and charged with possession of more than four ounces of cocaine at John F. Kennedy International Airport after he had disembarked from an Avianca Airlines flight coming from Bogota, Colombia, on March 27, 1989. After his arraignment on the felony complaint, the defendant was detained until his release on March 31, 1989, pursuant to CPL 180.80. On June 13, 1989, a bench warrant was issued upon his failure to appear for his arraignment on the indictment.

On November 26, 1991, the defendant, who was then incarcerated in a Federal penitentiary on unrelated charges, filed a "Petition for Speedy Trial or Dismissal of Detainer/Charges" with the Supreme Court, Queens County. At issue on this appeal is whether the period between June 13, 1989, when the warrant was issued, and November 26, 1991, when the defendant filed his speedy trial "petition", is excludable, pursuant to CPL 30.30 (4) (c), for purposes of determining the defendant's speedy trial motion. We conclude that the 73-day delay from July 24, 1989, to October 6, 1989, is chargeable to the People.

At the hearing conducted pursuant to this Court's decision and order, the following pertinent facts were established through the testimony of the arresting police officer, Port Authority Police Officer William Byrnes, and Detective Kevin Fahy. In taking the defendant's pedigree at the time of his arrest, the defendant gave his home address as 99-30 41st Avenue, Elmhurst, New York. The defendant did not give any other address.

On July 5, 1989, Detective Kevin Fahy was assigned to investigate a bench warrant which had been issued against the defendant on June 13, 1989. Over defense counsel's objection,

Fahy was permitted to testify that, at that time, approximately one million warrants were pending in the New York City system and that in Queens County only 14 police officers were assigned to the Warrant Squad. Fahy was also permitted to describe the processing of bench warrants in New York City. Fahy received the warrant and the defendant's rap sheet on July 5, 1989. Between that date and July 24, 1989, he checked the computer several times to see if the warrant was still active and if there was any new information on the defendant. He did not make any notations of these computer checks.

On July 24, 1989, Fahy received a photograph of the defendant. However, he did not visit the address given by the defendant until October 6, 1989, because "[t]here are so few investigators in the Division, that [they] had been assigned to different locations. So I may have been assigned to other locations, and I didn't get a chance to get around to get go [sic] to that address until that time". Fahy noted that at that time he was assigned to the Court Division, Central Warrants Division, and the Queens Warrant Squad, and he was investigating approximately 50 warrants. Although Fahy initially stated that he made daily computer checks between July 24, 1989, and October 6, 1989, to see if the warrant on the defendant was still active and if there was any further information on the defendant, he later stated that it was not possible that he could check all 50 warrants each day and that every day when he went to work he would check some of the warrants that had been assigned to him.

On October 6, 1989, when Detective Fahy, for the first time, visited the address given by the defendant, "there was no listing on the bell for a Torres residing at that location". On that day, he spoke to the owner of the building, as well as the superintendent. Both individuals indicated that the defendant did not reside in the building.

On January 17, 1990, Detective Fahy checked the computer and found that another address had also been given for the defendant. However, there was no such address in Queens County. On January 24, 1990, Fahy sent a letter of inquiry to the arresting police officer to find out if there was any further information on the defendant. On February 6, 1990, Fahy checked with the Department of Motor Vehicles to see if the defendant had a driver's license, went back to the address given by the defendant and showed the defendant's photograph to pedestrians in the area, interviewed the postal carriers for the area, and also called the "CARS" unit and determined that the defendant was not on parole or in a City or State cor-

rectional facility. At that time, he filed a warrant with the CARS unit. After February 6, 1990, Detective Fahy did not do anything with regard to the warrant.

CPL 30.30 (4) (c) provides, in pertinent part, that in computing the time within which the People must be ready for trial, the court must exclude, "the period of delay resulting from the absence or unavailability of the defendant or, where the defendant is absent or unavailable and has either escaped from custody or has previously been released on bail or on his own recognizance, the period extending from the day the court issues a bench warrant * * * because of the defendant's failure to appear in court when required, to the day the defendant subsequently appears in the court pursuant to a bench warrant * * * voluntarily or otherwise. A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence".

Although a general description of warrant-processing methods in the New York City Criminal Courts, such as was done in this case, is not factually sufficient to provide a foundation for determining how much of the delay may be considered as being reasonably inherent in processing a warrant *(see, People v Luperon,* 85 NY2d 71, 79, n 2), we conclude that the 20-day delay between June 13, 1989, when the warrant was issued, and July 5, 1989, when it was assigned to Detective Fahy, is excludable " 'as reasonable administrative delay inherent in the processing of the warrant' " *(People v Davis,* 205 AD2d 697, 700; *People v Lewis,* 150 Misc 2d 886). We need not reach the issue of whether the 19-day period from July 6, 1989, to July 23, 1989, is also excludable.

The 73-day delay between July 24, 1989, and October 6, 1989, however, is not excludable. That there were approximately one million warrants pending in the New York City system and that Detective Fahy had been assigned approximately 50 of them is irrelevant to a determination of due diligence *(see, People v Bolden,* 81 NY2d 146; *People v Davis, supra,* at 701). Moreover, it is also insufficient to assert that Fahy conducted computer checks during that period *(see, People v Davis, supra; People v Barasso,* 193 AD2d 448).

We reject the People's contention that this period is excludable because the defendant's location was unknown and he was attempting to avoid apprehension or prosecution. "In order to avail themselves of this exclusion, the People must expend the minimal effort of checking the defendant's last known address, in the absence of any information that he was

not there" *(People v Davis, supra,* at 700-701). Prior to October 6, 1989, there was no basis whatsoever for the People to believe, reasonably or otherwise, that the defendant did not reside at the address he gave or that it was a phony address.

Nor can it be seriously argued that the period between July 24, 1989, and October 6, 1989, should not be treated as a separate and discrete block of time. "Speedy trial analysis has always taken discrete, logical time periods and determined whether, for some unifying reason, a particular period is or is not includable in the speedy trial time. Indeed, CPL 30.30 (4) (c) excludes only those specific 'periods' when the authorities have acted with due diligence in attempting to locate or apprehend the defendant * * * Thus, the statutory language itself mandates consideration of the excludability of discrete, legally relevant blocks of time within the total period of the People's unreadiness. While it may often be difficult or impractical to divide the period of warrant enforcement into segments for purposes of analysis under CPL 30.30 (4) (c), no such difficulty is present in this case, where a clear line can be drawn between the period before and the period after the warrant was assigned to a police officer and the efforts to enforce it began" *(People v Luperon, supra,* 85 NY2d, at 79-80).

It is also not an answer to suggest "that the blame should be shifted to the defendant because of his failure to return to court" *(People v Luperon, supra,* at 80).

Since the People stipulated at the commencement of the hearing that they were chargeable with 173 days, the addition of the 73 days delay results in a total of 246 days which are chargeable to the People. Accordingly, the defendant's speedy trial motion is granted, since the total time chargeable to the People exceeds the allowable 184 days. Miller, J. P., Santucci and Florio, JJ., concur.

Copertino, J., dissents and votes to affirm the judgment appealed from, with the following memorandum, with which Pizzuto, J., concurs: The majority of this Court holds that the period between July 24, 1989, and October 6, 1989, is chargeable to the People because the latter date marks the first time that police inquired about the defendant at his last known address. Because this result has the effect of imposing a duty of diligence where no such duty exists, I dissent and vote to affirm the judgment of conviction.

At the time of his arrest, the defendant was in possession of a suitcase containing more than a pound-and-a-half of cocaine. On the trial of this action defendant admitted that he possessed the narcotics, but claimed double jeopardy in that he

had been convicted of crimes arising out of the same criminal conduct in Federal court. On this appeal, the defendant does not deny guilt nor does he dispute the evidence that he committed the crime for which he has been convicted.

The facts relevant to the defendant's motion pursuant to CPL 30.30 are set forth by the majority. Based on the evidence that the defendant gave a false address, failed to appear for arraignment on the subject charge, and continued to engage in illegal drug activities, the hearing court concluded that the defendant was attempting to avoid apprehension and prosecution. The court also concluded that the prosecution exercised due diligence in attempting to locate the defendant. The hearing court therefore denied the defendant's motion pursuant to CPL 30.30.

Because the defendant was accused of a felony, the People were required to be ready for trial within six months (*see,* CPL 30.30 [1] [a]; Penal Law § 220.21). From those six months will be excluded a period defined as: "the period of delay resulting from the absence or unavailability of the defendant *or, where the defendant is absent or unavailable and has either escaped from custody or has previously been released on bail or on his own recognizance, the period extending from the day the court issues a bench warrant pursuant to [CPL] section 530.70 because of the defendant's failure to appear in court when required, to the day the defendant subsequently appears in the court pursuant to a bench warrant or voluntarily or otherwise.* A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence. A defendant must be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence" (CPL 30.30 [4] [c] [emphasis denoting 1984 amendment] [L 1984, ch 670]).

In *People v Bolden* (81 NY2d 146), the Court of Appeals made it clear that the definitions of "absent" and "unavailable" in CPL 30.30 (4) (c) apply to the 1984 amendment establishing an exclusion based on the issuance of a bench warrant (*see, People v Bolden, supra,* at 150-151). The Court recognized that the amendment was intended to relieve the People of their burden of showing a causative relationship between the defendant's absence and their delay, but concluded that the People were required to demonstrate due diligence in the enforcement of the bench warrant (*see, People v Bolden, supra,* at 152, 154). The Court noted, however, that where the defendant's absence is based on a claim that " 'his location [was] unknown and he

[was] attempting to avoid apprehension or prosecution,' " no showing of due diligence is required *(People v Bolden, supra,* at 155).

In *People v Luperon* (85 NY2d 71), the Court of Appeals held that the People will be charged with the period prior to the commencement of their diligent efforts to enforce a bench warrant *(see, People v Luperon, supra,* at 79-80). In doing so, the Court rejected the People's argument that such a result was precluded by the finding of both the hearing court and the Appellate Division that the People acted diligently overall in their efforts to enforce the warrant *(see, People v Luperon, supra,* at 79). The Court again noted, however, that diligence was not required where the defendant is deemed "absent" because " 'his location is unknown and he is attempting to avoid apprehension or prosecution,' " a claim which was not made in that case *(People v Luperon, supra,* n 3, at 80).

The majority of this Court concludes that the hearing court in this case erred in excluding the period between July 24, 1989, when Detective Fahy received a photograph of the defendant, and October 6, 1989, when Fahy first visited the address given by the defendant at the time of his arrest. The majority bases its reasoning on *People v Davis* (205 AD2d 697), wherein a majority of this Court concluded that in order for a period of time to be excluded on the ground that the defendant's location was unknown and he was attempting to avoid apprehension, the People must at least "check" the defendant's last known address, in the absence of any information that he was not there.

*Davis* is distinguishable because in that case the police officer to whom the defendant's warrant was assigned obtained the address and telephone number of the defendant's mother, with whom the defendant claimed he lived. The officer also learned that the complainant had the same address and telephone number as the defendant's mother. Nevertheless, the officer never telephoned the defendant's mother or attempted to confirm whether the defendant lived at that address. We held that, absent some information that the defendant was not there, e.g., that he had fled the jurisdiction, the People could not assert that the defendant's location was unknown without expending the minimal effort of making inquiry at the last known address *(see, People v Davis, supra,* at 700-701).

Here, when Detective Fahy inquired at the address given by the defendant at the time of his arrest he learned that the defendant did not reside there. Fahy also ascertained that a

second address given by the defendant did not exist. Notably, the defendant did not testify at the hearing on remittitur to offer an explanation regarding the false addresses. The evidence supports the hearing court's conclusion that the defendant was attempting to evade prosecution from the time of his release *(see, People v Maldonado,* 210 AD2d 259; *People v Garrett,* 171 AD2d 153, 155). Moreover, Fahy's efforts to locate the defendant at the addresses given by him satisfy the "minimal effort" required by *Davis* to allow the People to assert that the defendant's location was unknown.

The majority has interpreted *Davis* to require, however, that this exclusion may not be asserted for any period prior to when the People first inquired at the defendant's last known address. The majority bases its reasoning on the Court of Appeals' holding in *People v Luperon (supra,* 85 NY2d, at 71). In *Luperon,* however, the Court was addressing the People's claim that the defendant was absent because his location could not be determined by due diligence. As previously stated, the Court merely held that the exclusion on that ground did not apply until the People's efforts to enforce the warrant began *(see, People v Luperon, supra,* at 84-85).

By applying the holding of *Luperon* to the facts of this case, the majority overlooks an important distinction between the two discrete categories of absence in CPL 30.30 (4) (c). Where the defendant is deemed absent because his location cannot be determined with due diligence, the exclusion depends on the prosecution's action or inaction. Accordingly, the People will be charged with any time prior to the commencement of their efforts to locate the defendant *(see, People v Luperon, supra).*

Where the defendant is deemed absent because his location is unknown and he is attempting to avoid apprehension, however, exclusion of the period of absence is based on the defendant's actions which, in this case, began when he gave a false address at or before the time of his release. The fact that the police did not learn that the address was false until some time later should be of no consequence because the exclusion is based on the defendant's affirmative efforts to evade prosecution rather than the extent of the People's efforts to find him *(see, e.g., People v Garrett, supra,* 171 AD2d 153; *People v Jackson,* 142 AD2d 597; *People v Walker,* 133 AD2d 2).

As has often been noted, exclusion on this ground does not require a showing of due diligence *(see, People v Luperon, supra,* at 71; *People v Bolden, supra; People v Davis, supra, dissenting mem of Pizzuto, J.,* at 702; *People v Jackson, supra; People v Walker, supra),* and there is no basis in the statute for the

imposition of such a requirement. Nevertheless, the impact of the majority's conclusion is that, absent some indisputable evidence that the defendant absconded, the People will be charged with the period prior to their first efforts to locate the defendant, even if the evidence indicates that the defendant was evading prosecution from the moment of his release. Because I do not interpret either *Luperon* or *Davis* as requiring such a result, I conclude that the period from July 24, 1989 to the time of the defendant's appearance, as well as the period from July 6, 1989, to July 23, 1989, should be excluded, and that the Supreme Court properly denied the defendant's motion pursuant to CPL 30.30.