*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 23, 2015                    105521
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                  MEMORANDUM AND ORDER

ANDRE HAWKINS,
                    Appellant.
_____


Calendar Date:  June 5, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Devine, JJ.

                    _____


        Alexander W. Bloomstein, Hillsdale, for appellant.

        D. Holley Carnright, District Attorney, Kingston (Joey
Drillings of counsel), for respondent.

                    _____


Egan Jr., J.

        Appeal from a judgment of the County Court of Ulster County
(Williams, J.), rendered July 27, 2012, upon a verdict convicting
defendant of the crimes of criminal sale of a controlled
substance in the third degree (two counts) and criminal
possession of a controlled substance in the third degree (two
counts).

        In April 2011, as the result of an investigation by the
Ulster Regional Gang Enforcement Narcotics Team (hereinafter
URGENT), defendant was indicted and charged with two counts of
criminal sale of a controlled substance in the third degree and
two counts of criminal possession of a controlled substance in
the third degree.  The charges stemmed from two separate and
targeted buys in April 2010, wherein defendant sold narcotics to

an undercover officer assigned to URGENT and working in conjunction with a confidential informant (hereinafter CI). Although a warrant for defendant's arrest was issued in April 2011, he was not apprehended until he turned himself in to authorities in October 2011. Following defendant's arraignment, defense counsel moved to dismiss the indictment upon statutory speedy trial grounds, contending, among other things, that the People failed to exercise due diligence in locating defendant. A hearing ensued, at the conclusion of which County Court found that the People had satisfied their due diligence obligation; as a result, the 200 days that elapsed between the filing of the indictment in April 2011 and the People's statement of readiness in October 2011 were not chargeable to the People, and defendant's speedy trial motion was denied.

The matter proceeded to trial, at which time both the undercover officer and defendant, among others, appeared and testified as to the underlying drug transactions. Defendant was convicted as charged and thereafter was sentenced, as a second felony offender, to concurrent prison terms of 10 years followed by three years of postrelease supervision. This appeal by defendant ensued.

We affirm. Initially, we find no merit to defendant's claim that County Court erred in denying his speedy trial motion. Inasmuch as defendant was charged with felony offenses, the People were required to be ready for trial within six months (see CPL 30.30 [1] [a]). "In computing the time within which the People must be ready for trial, the court must exclude 'the period of delay resulting from the absence or unavailability of the defendant'" (People v Devore, 65 AD3d 695, 696 [2009], quoting CPL 30.30 [4] [c] [i]). For purposes of the statute, and insofar as is relevant here, "[a] defendant must be considered absent whenever his [or her] location is unknown and . . . [such] location cannot be determined by due diligence" (CPL 30.30 [4] [c] [i]; see People v Devino, 110 AD3d 1146, 1148 [2013]). "The determination of whether the People have exercised due diligence in locating a person is a mixed question of law and fact" (People v Grey, 259 AD2d 246, 248 [1999], lv denied 94 NY2d 880 [2000] [citation omitted]), and "[w]hile minimal attempts to locate a defendant and secure his [or her] presence in court will not

satisfy the due diligence standard, the police are not obliged to search for a defendant indefinitely as long as they exhaust all reasonable investigative leads as to his [or her] whereabouts" (People v Delaronde, 201 AD2d 846, 847-848 [1994]; accord People v Petrianni, 24 AD3d 1224, 1224 [2005]; see People v Devino, 110 AD3d at 1148-1149).

Here, there is no dispute that 200 days elapsed between the filing of the indictment in April 2011 and the People's declaration of readiness in October 2011, and the record makes clear that defendant's whereabouts were unknown to law enforcement officials during this time period. Hence, the issue distills to whether the People exercised due diligence in attempting to locate defendant. In this regard, a detective with the City of Kingston Police Department in Ulster County who, in turn, was assigned to URGENT, testified that, immediately after the warrant for defendant's arrest was issued, he reached out to the CI who had participated in the underlying drug transactions in an effort to obtain an address or phone number for defendant. When that effort proved to be unsuccessful, the detective ran defendant's criminal history report and obtained a former address for defendant in the City of Schenectady, Schenectady County. Within one week of the issuance of the arrest warrant, the detective contacted the City of Schenectady Police Department and asked that they check the address in question.

When a check of the Schenectady County address failed to locate defendant, the detective entered defendant's arrest warrant into the New York State Police Information Network database in May 2011, a nationwide database of active arrest warrants. The detective further testified that, in July 2011, a fellow URGENT member ran a "comprehensive report" through another law enforcement database in an effort to obtain a list of defendant's last known addresses. Based upon the results of this search and information obtained from another informant,[1] the detective obtained an address for defendant in the City of

---

[1] Throughout this time period, the detective also reached out to other informants in an effort to ascertain defendant's whereabouts.

Poughkeepsie, Dutchess County and again requested that local law enforcement check the location provided. When that effort failed, the detective reached out to a fellow URGENT member who, in September 2011, put him in touch with the United States Marshals Service in the City of Albany. In October 2011, the Marshals Service was able to locate and contact defendant's "significant other," who relayed a message to defendant. Shortly thereafter, defendant turned himself in to the authorities.

In light of the foregoing efforts, it cannot be said that "the authorities shirked their continuing obligation of due diligence" (People v Marrin, 187 AD2d 284, 286 [1992], lv denied 81 NY2d 843 [1993]; accord People v Petrianni, 24 AD3d at 1225). Although defendant averred that he was "living openly" and receiving mail at a particular address during the relevant time period and faults the People and law enforcement for failing to check his Social Security number against the records of various governmental agencies, counsel conceded at oral argument that defendant's name was not on the lease for the premises, and the record is devoid of proof that defendant registered that address with any entity, including the United States Postal Service, the Department of Motor Vehicles, the Department of Labor and/or state and federal taxing authorities (compare People v Devino, 110 AD3d at 1149; People v Devore, 65 AD3d at 697). Under these circumstances, we are satisfied that the People discharged their due diligence obligation – even if "greater efforts could have been undertaken" (People v Grey, 259 AD2d at 249). Accordingly, defendant was not deprived of his statutory right to a speedy trial.

Nor are we persuaded that County Court erred in permitting the People to amend the indictment. CPL 200.70 (1) provides, in relevant part, that "[a]t any time before or during trial, the court may, upon application of the [P]eople and with notice to the defendant and opportunity to be heard, order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits." Here,

during the course of jury selection, County Court granted the People's oral motion to amend the indictment to reflect that defendant sold (count 3) and/or possessed (count 4) cocaine as opposed to heroin. The subject amendment did not alter the People's theory of the case but, rather, appears to have been required simply to correct a clerical error in the indictment. Additionally, we discern no prejudice to defendant as a result of the amendment. Notably, the People's pretrial discovery response, as well as the grand jury minutes, reflected that the substance forming the basis for the charges outlined in counts 3 and 4 of the indictment was cocaine. Under these circumstances, County Court did not err in permitting the amendment (see People v Bausano, 122 AD3d 1341, 1341 [2014], lv denied 25 NY3d 1069 [2015]; People v Monday, 309 AD2d 977, 980 [2003]; People v Pacheco, 280 AD2d 685, 686 [2001], lv denied 96 NY2d 905 [2001]; see also People v Hall, 125 AD3d 1095, 1096 [2015]; People v Cruz, 61 AD3d 1111, 1112 [2009]).

Although defendant's challenge to the legal sufficiency of the evidence has not been preserved for our review, "our weight of the evidence analysis necessarily involves an evaluation of whether all elements of the charged crimes were proven beyond a reasonable doubt at trial" (People v Pine, 126 AD3d 1112, 1114 [2015] [internal quotation marks, brackets and citations omitted]; see People v Colburn, 123 AD3d 1292, 1292 n [2014], lv denied 25 NY3d 950 [2015]). Insofar as is relevant here, "[a] person is guilty of criminal sale of a controlled substance in the third degree when he [or she] knowingly and unlawfully sells . . . a narcotic drug" (Penal Law § 220.39 [1]), and "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]). The crux of defendant's argument on appeal is that it is "impossible" to discern — from the audio/video recordings of the two transactions — whether the drugs at issue were sold by defendant or the CI. Defendant's argument on this point, however, ignores the fact that there was a third person present for the transactions at issue — namely, the undercover officer who actually purchased the drugs and positively identified defendant as the seller.

The record reflects that arrangements were made through the CI for the undercover officer to make a controlled drug purchase from defendant at the Kingston Plaza parking lot in Kingston. The undercover officer, who had been shown a photograph of defendant and was equipped with a body wire, drove to the appointed location in an unmarked vehicle and waited for the CI and defendant to arrive. After a car driven by the CI pulled up next to the undercover officer's vehicle, the undercover officer exited and entered the back seat of the CI's car. Following a brief conversation, the front-seat passenger — a black male that the undercover officer later positively identified as defendant — handed the undercover officer 10 glassine envelopes of a substance that subsequently tested positive for heroin in exchange for $120 in prerecorded buy money. The undercover officer then indicated to defendant and the CI that, if they were going to be around, she might have additional funds to purchase more drugs — specifically, crack cocaine. After exiting the CI's vehicle, the undercover officer returned to a predetermined location and turned over the heroin that she had purchased from defendant.

Within minutes, a phone call was placed to the CI and a second controlled buy was arranged. The undercover officer, still wearing a body wire, returned to the shopping plaza and awaited the arrival of the CI and defendant. As with the previous transaction, the undercover officer exited her vehicle and entered the back seat of the CI's vehicle, at which point defendant handed the undercover officer four small, clear plastic "twists" of a substance later determined to be crack cocaine in exchange for $80 in prerecorded buy money. The undercover officer again returned to a predetermined location, relinquished the drugs in question and, as with the prior transaction, positively identified defendant as the individual from whom she had purchased the drugs. Both transactions were recorded by members of URGENT, and audio/video recordings of these transactions were entered into evidence at trial.

Although defendant readily admitted to being present for the subject sales, he insisted that the actual drug transactions occurred between the CI and the undercover officer. This conflicting testimony, however, presented a credibility issue for

the jury to resolve (see People v Toye, 107 AD3d 1149, 1151 [2013], lv denied 22 NY3d 1091 [2014]).  Accordingly, "[w]hile a different verdict would not have been unreasonable, viewing the evidence in a neutral light and giving due deference to the jury's credibility determinations, we cannot say that the jury failed to accord the evidence the weight that it deserved" (People v Pine, 126 AD3d at 1115-1116; see People v Richards, 124 AD3d 1146, 1146-1147 [2015], lv denied 25 NY3d 992 [2015]).

Finally, defendant contends that he was denied the effective assistance of counsel — a claim that is premised, in large measure, upon counsel's decision to question defendant on direct examination regarding his prior criminal history, which ultimately resulted in counsel eliciting information beyond the scope of County Court's prior — and favorable — Sandoval ruling. "To succeed on an ineffective assistance claim, a defendant must prove that trial counsel failed to provide meaningful representation. . . . In addition, even if a defendant shows that the lawyer erred, a defendant must further demonstrate the absence of strategic or other legitimate explanations for the error" (People v Baker, 14 NY3d 266, 270-271 [2010] [internal quotation marks and citations omitted]; see People v Wheeler, 124 AD3d 1136, 1138-1139 [2015], lv denied 25 NY3d 993 [2015]).

Based upon our review of the record as a whole, we are satisfied that defendant received meaningful representation. Trial counsel engaged in appropriate pretrial motion practice, including filing a motion to dismiss the indictment upon statutory speedy trial grounds, made cogent opening and closing statements, strongly cross-examined the People's witnesses, registered appropriate objections and arguments throughout the course of the trial and advanced a plausible defense — namely, that it was the CI, who died prior to trial, who actually sold the drugs to the undercover officer on the day in question. Consistent with that theory, defense counsel elicited testimony regarding the CI's criminal background, the fact that the CI was paid for his services in connection with the underlying transactions and that, contrary to routine procedures, he was not searched for contraband prior to the controlled purchases at issue.

Although defense counsel indeed questioned defendant regarding his prior criminal history, thereby admittedly opening the door for further exploration by the People on this point, the record makes clear that this was an intentional, tactical decision on the part of counsel. Specifically, counsel's strategy was designed to show that, while defendant did have a prior history of drug use and drug-related convictions, defendant, who last sold drugs in 1992 and last used drugs in 1998, was a recovering addict who no longer sold drugs to support his habit. Upon reviewing both the colloquy between defense counsel and County Court and counsel's summation, it is apparent that counsel was endeavoring to portray defendant as a man who had seen the error of his ways (at least as far as drugs were concerned) and, hence, it was far more likely that it was the CI — and not defendant — who had sold the drugs to the undercover officer. Even assuming that this strategy was — upon further reflection — ill advised, "a simple, hindsight disagreement with trial tactics or strategy is insufficient to establish a lack of meaningful representation" (People v Underdue, 89 AD3d 1132, 1134 [2011], lv denied 19 NY3d 969 [2012]). Defendant's remaining contentions, including his assertion that the sentence imposed is harsh and excessive, have been examined and found to be lacking in merit.

McCarthy, J.P., Lynch and Devine, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court