*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  May 5, 2016                    104523
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

            v                                    MEMORANDUM AND ORDER

RONALD WRIGHT, Also Known as
    NINO,
                        Appellant.
_____

Calendar Date:   March 21, 2016

Before:  Garry, J.P., Egan Jr., Lynch, Devine and Clark, JJ.

                    _____


        George J. Hoffman Jr., Albany, for appellant, and appellant
pro se.

        Eric T. Schneiderman, Attorney General, New York City
(Hannah Stith Long of counsel), for respondent.

                    _____


Garry, J.P.

        Appeal from a judgment of the County Court of Albany County
(Breslin, J.), rendered July 5, 2011, upon a verdict convicting
defendant of the crimes of enterprise corruption, attempted
criminal possession of a controlled substance in the third
degree, criminal possession of a controlled substance in the
third degree, criminal sale of a controlled substance in the
second degree, conspiracy in the second degree and criminal sale
of controlled substance in the third degree (17 counts).

        Defendant was one of approximately 40 individuals who were
indicted for drug crimes in September 2010 after an investigation
into narcotics trafficking in and around the City of Albany by

the Attorney General's Organized Crime Task Force.  The People alleged that defendant, who was based in Long Island, was a heroin supplier for an Albany-based group of members of the Bloods gang, including codefendant Erick Cochran, who shared the common purpose of selling marihuana and narcotics.  The case against defendant was based in large part upon intercepted cellular telephone conversations and text messages exchanged among defendant, Cochran and other individuals.  Dennis Guiry, an investigator who participated in the surveillance, testified at trial regarding his interpretation of the intercepted communications, which allegedly revealed that the group was a criminal enterprise, that defendant and Cochran trafficked in narcotics as members of this group and, specifically, that defendant supplied Cochran with bulk heroin on two occasions in July 2010, which Cochran then sold to individuals in the Albany area.

Following a joint jury trial with Cochran, defendant was convicted of enterprise corruption, attempted criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, criminal sale of a controlled substance in the second degree, conspiracy in the second degree and 17 counts of criminal sale of a controlled substance in the third degree.  He was thereafter sentenced to an aggregate prison term of 141½ years.  Defendant appeals.

Defendant contends that the People failed to establish that he sold more than one-half ounce of heroin on the date charged in the indictment (see Penal Law § 220.41 [1]) and, thus, his conviction for criminal sale of a controlled substance in the second degree is not supported by legally sufficient evidence and is also against the weight of the evidence.  Although the legal sufficiency contention was not properly preserved (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Cruz, 131 AD3d 724, 724 [2015], lv denied 26 NY3d 1087 [2015]), we necessarily determine whether each element of the crime was proven beyond a reasonable doubt in assessing the claim that the conviction is against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Scott, 129 AD3d 1306, 1307 [2015], lv denied 26 NY3d 1092 [2015]).  This challenged charge

arose from the second of the two July 2010 heroin transactions. Guiry testified that the intercepted communications revealed that Cochran contacted defendant on July 11, 2010 to advise that he had sold all of the heroin from the earlier transaction and wished to make another purchase. Negotiations as to price and quantity ensued, and on July 12, 2010 — the date charged in the indictment — Cochran traveled to New York City to meet with defendant. According to Guiry, their intercepted conversations revealed that, on that day, they reached an agreement that Cochran would purchase 16 grams of heroin. No transfer of drugs actually occurred until the next day, when defendant arranged for Cochran to buy heroin from a seller on Long Island. By that time, Cochran had spent some of the money that he had brought with him and could afford to purchase only approximately 13½ grams. Following the purchase, Cochran transported the heroin to Albany, where he cut, packaged and resold it.

We agree with defendant that the People failed to prove beyond a reasonable doubt that a statutory sale of more than one-half ounce of heroin occurred. A statutory sale may be proven by evidence of an offer or agreement to sell drugs, but "the weight of the material must be independently shown" (People v George, 67 NY2d 817, 819 [1986]; see Penal Law § 220.00 [1]; People v Banchs, 268 AD2d 262, 262 [2000], lv denied 95 NY2d 793 [2000]). Here, no narcotics were recovered by the police, and the proof of the weight of heroin that defendant agreed to procure for Cochran was equivocal; while the amount of 16 grams was discussed, Cochran also stated that he might purchase "something like that" or, because he had limited funds and other expenses, might "get something lower." As the People correctly argue, the full amount of transferred narcotics need not always be recovered to satisfy the weight requirement when a sale is based upon an offer or an agreement; nevertheless, there must be some form of independent evidence from which the total weight can be extrapolated (see People v Alvarado, 228 AD2d 168, 168 [1996], lv denied 88 NY2d 980 [1996]). As there was none here, defendant's conviction for criminal sale of a controlled substance in the second degree is reversed and the corresponding count of the indictment dismissed (see CPL 470.20 [2]; People v Acevedo, 192 AD2d 1094, 1094 [1993], lv denied 81 NY2d 1010 [1993]).

As a result of this determination, defendant's conviction for conspiracy in the second degree must also be reversed. "A person shall not be convicted of conspiracy unless an overt act is alleged and proved to have been committed by one of the conspirators in furtherance of the conspiracy" (Penal Law § 105.20; see generally People v Monday, 309 AD2d 977, 978 [2003]). Here, the People alleged that defendant and Cochran conspired to commit a class A felony consisting of the sale of more than one-half ounce of heroin on July 12, 2010; the overt act alleged in the indictment was the statutory sale itself. Our determination that the People failed to prove beyond a reasonable doubt that the July 12, 2010 agreement involved the requisite amount of heroin requires a finding that the People also failed to prove the alleged overt act in support of the conspiracy charge (see Penal Law § 105.20; People v Menache, 98 AD2d 335, 337-338 [1983]; compare People v Weaver, 157 AD2d 983, 984-985 [1990], lv denied 76 NY2d 744 [1990]). The People's contention that the indictment also alleged that overt acts occurred on two other dates is unavailing, as neither of these transactions was shown to have been undertaken in furtherance of the alleged conspiracy to commit a class A felony.

Next, defendant contends that the People failed to prove that the substance that he and Cochran possessed and sold was heroin and, thus, that his 17 convictions for criminal sale of a controlled substance in the third degree, as well as his convictions for attempted criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, are unsupported by legally sufficient evidence and are against the weight of the evidence.[1] Defendant preserved this contention at trial with the

---

[1] It is undisputed that defendant did not personally participate in Cochran's sales of heroin in the Albany area. Instead, the criminal sale charges against defendant were based upon a theory of accessorial liability, which required proof "that defendant acted with the requisite mental culpability . . . and that he solicited, requested, commanded, importuned, or intentionally aided" Cochran in making the sales (People v Blackman, 118 AD3d 1148, 1149 [2014] [internal quotation marks,

requisite "specifically directed" argument only as to the
criminal possession and attempted criminal possession charges
(People v Gray, 86 NY2d 10, 19 [1995] [internal quotation marks
omitted]).  Nevertheless, as previously noted, we must determine
whether each element of all of the crimes was proven beyond a
reasonable doubt as part of our weight of the evidence review
(see People v Danielson, 9 NY3d at 348-349).

    As for the merits, the People are not required to recover
drugs for testing in order to prove possession or sale of a
controlled substance; rather, they may rely on other evidence
that establishes the nature of the drugs in question beyond a
reasonable doubt (see People v Whitehead, 130 AD3d 1142, 1144-
1145 [2015], lv granted 26 NY3d 1043 [2015]).  Here, Guiry
testified that Cochran and defendant used slang terms for heroin
in the intercepted communications, negotiated prices that
corresponded with the going prices for heroin, arranged to obtain
a cutting agent used only with heroin, and referenced packaging
methods used solely for that drug.  Additionally, two customers
who bought drugs from Cochran immediately after his transactions
with defendant – both of whom were experienced users of heroin
and other drugs – testified that the substance they purchased was
heroin.  Finally, lab analysis of a substance seized from one of
the customers immediately after he purchased it confirmed that it
was heroin.  Accordingly, the People proved beyond a reasonable
doubt that the substance possessed and sold by Cochran and
defendant was heroin (see People v Williams, ___ AD3d ___, ___,
2016 NY Slip Op 02863, *2 [2016]; People v Whitehead, 130 AD3d at
1145).

    We reject defendant's claim that his conviction for
enterprise corruption was based on legally insufficient evidence
and was against the weight of the evidence in that the People
failed to establish his connection to a "criminal enterprise"
(Penal Law § 460.20 [1]).  The crime of enterprise corruption is
committed when a defendant, "having knowledge of the existence of
a criminal enterprise and the nature of its activities, and being
employed by or associated with such enterprise, . . .

---

 brackets and citations omitted], lv denied 24 NY3d 1001 [2014]).

intentionally conducts or participates in the affairs of an enterprise by participating in a pattern of criminal activity" (Penal Law § 460.20 [1] [a]).  A criminal enterprise, in turn, is "a group of persons sharing a common purpose of engaging in criminal conduct, associated in an ascertainable structure distinct from a pattern of criminal activity, and with a continuity of existence, structure and criminal purpose beyond the scope of individual criminal incidents" (Penal Law § 460.10 [3]).

The People submitted proof of the activities and organizational structure of "G-Shine," a sect of the Bloods street gang that was engaged in the common purpose of making money through narcotics trafficking in and around Albany.  Guiry described the customs, rules and organizational structure of the Albany group as revealed in intercepted communications among its members, including particular speech patterns, the use of the color red for identification, initiation requirements, a loyalty oath, scheduled meetings, and rules such as prohibitions against cooperation with law enforcement.  Members of the Albany group had specialized functions in supplying and selling various drugs and obtaining customers, and certain members occupied leadership roles with the authority to schedule meetings, enforce rules and punish violations.  This evidence established the existence of a distinct criminal entity with an ascertainable structure that went beyond "mere[] patterns of criminal conduct" (People v Western Express Intl. Inc., 19 NY3d 652, 658 [2012]).

Although defendant was not based in the Albany area and did not attend the Albany group's meetings, the People nevertheless established his participation with evidence that, among other things, he interacted with Cochran and other group members in drug-trafficking activities, regularly used slang terms indicating his membership in the Bloods street gang, and was knowledgeable about the group's structure and leadership.  In the intercepted calls, defendant referred to himself as a "Big Homie" — a term that, according to Guiry, means a boss within the rank structure of the Bloods; he further stated that it was his "job" to enforce the rule against cooperating with law enforcement and that he had the authority to kill other Bloods.  When one of the Albany group's leaders was shot in what the People alleged was

retaliation for his suspected cooperation with law enforcement, someone who was involved in the shooting immediately reported it to defendant, who, in turn, discussed the ramifications of the shooting upon the Albany group's leadership structure with Cochran.[2]  In other conversations, defendant and Cochran discussed the evidence that this individual had been cooperating with law enforcement, as well as the effect upon the Albany group of another group leader's arrest.  Guiry further described a call between defendant and another member of the Bloods who was allegedly a cocaine supplier for the Albany group, in which defendant told this individual that his suspected activities as a "snitch" had interfered with a drug transaction that defendant had authorized, reminded the individual of the prohibition against cooperating with law enforcement and warned that violations were "serious s***."  This evidence, as well as the previously-discussed evidence that defendant supplied narcotics to Albany group members for resale in the Albany area, was legally sufficient to establish defendant's knowing and intentional participation in a criminal enterprise and thus to support his conviction for enterprise corruption (see Penal Law § 460.20 [1] [a]; People v Keschner, 25 NY3d 704, 720-721 [2015]; People v Kancharla, 23 NY3d 294, 305-306 [2014]).  Further, according the appropriate deference to the jury's credibility assessments and viewing the evidence in a neutral light (see People v Gibson, 121 AD3d 1416, 1418 [2014], lv denied 24 NY3d 1119 [2015]), we find that the verdict on this count is supported by the weight of the evidence.

County Court did not err in refusing defendant's request for an instruction regarding an agency defense, as there was no "evidence, however slight, to support the inference that [defendant] was acting, in effect, as an extension of the buyer" (People v Argibay, 45 NY2d 45, 55 [1978], cert denied 439 US 930 [1978]; see People v Ortiz, 76 NY2d 446, 448 [1990]; People v Nowlan, 130 AD3d 1146, 1147 [2015]).  The evidence clearly established that defendant and Cochran had previously engaged in drug transactions as part of a business relationship and that

---

[2]  The jury acquitted defendant of a charge of attempted murder in the second degree arising from this shooting.

both parties expected that defendant would earn commissions for his assistance. Viewing the proof in the light most favorable to defendant, as we must (see People v Delaney, 309 AD2d 968, 970 [2003]), there was no reasonable view of the evidence that supported a possible finding of the agency defense (see People v Herring, 83 NY2d 780, 782-783 [1994]; People v Ortiz, 76 NY2d at 449-450; People v Hamilton, 135 AD3d 500, 501 [2016]). Defendant's further contention that County Court's jury instruction on enterprise corruption was improper in that it failed to provide the name of the alleged criminal enterprise is unpreserved, due to the lack of any objection (see CPL 470.05 [2]; People v Melendez, 16 NY3d 869, 869-870 [2011]; People v Gibson, 121 AD3d at 1419 n). As there was no evidence of any other criminal enterprise that might have improperly led the jury to consider an uncharged theory of liability (see People v Grega, 72 NY2d 489, 496-497 [1988]), we decline to exercise our interest of justice jurisdiction to take corrective action.

We reject defendant's contention that he did not receive the effective assistance of counsel. Defendant finds fault with his trial counsel's failure to request an instruction on geographic jurisdiction. Notably, defense counsel argued in summation that defendant was never in Albany County, and objected when, immediately thereafter, the People asked County Court to instruct the jury that jurisdiction was obtained by defendant's participation in a telephone conversation with an individual in Albany County. "[T]o prevail on a claim of ineffective assistance of counsel, it is incumbent upon a defendant to establish that alleged errors by counsel demonstrate the absence of a legitimate strategy or explanation" (People v Welch, 137 AD3d 1313, 1313 [2016]; 2016 NY Slip Op 01516 [2016]; see People v Benevento, 91 NY2d 708, 712 [1998]). It appears that defendant's trial counsel may have reasonably chosen to avoid the instruction, as geographic jurisdiction is established when a preponderance of the evidence indicates that an element of the offense occurred in the jurisdiction — such as, here, a statement over the telephone to a person in Albany County in furtherance of a drug transaction (see CPL 20.40 [1]; 20.60 [1]; People v Muniz, 215 AD2d 881, 883 [1995]). Thus, defendant's current disagreement with this strategy does not establish that he did not receive meaningful representation (see People v Hawkins, 130

AD3d 1298, 1305 [2015], lv denied 26 NY3d 968 [2015]).

Further, defendant was not deprived of the effective assistance of counsel by the failure of both his initial assigned counsel and the subsequent trial counsel who later replaced her to challenge the eavesdropping warrants that authorized the interception of Cochran's telephone calls, as counsel will not be found to be ineffective for failing to make an argument that has little or no chance of succeeding (see People v Stultz, 2 NY3d 277, 287 [2004]; People v Garcia, 131 AD3d 732, 734-735 [2015]). Here, the People discovered after obtaining an eavesdropping warrant for a telephone purportedly used by another individual that the telephone was actually used by Cochran and that his conversations with defendant referenced crimes beyond the scope of the original warrant. They sought to amend the warrant to retroactively authorize the interception of conversations related to these crimes and at the same time notified the court that the telephone was used by Cochran. Although captioned as an amendment, the contents of the People's application met the statutory and constitutional requirements to establish probable cause for an eavesdropping warrant on a new telephone and new telephone number (see CPL 700.20); accordingly, defendant did not establish that a challenge on this ground would have succeeded. Defendant's counsel provided vigorous representation that included, among other things, obtaining an acquittal upon a charge of attempted murder in the second degree and two other charges. Viewing the evidence as a whole, we find that defendant received meaningful representation (see People v Baldi, 54 NY2d 137, 147 [1981]; People v Gokey, 134 AD3d 1246, 1248 [2015]).

Finally, defendant contends that the sentence imposed by County Court is harsh and excessive. As originally imposed, defendant's sentence included his conviction for the class A-II felony of criminal sale of a controlled substance in the second degree and therefore was not subject to the statutory cap limiting the aggregate maximum term of his consecutive sentences to 30 years (see Penal Law §§ 70.30 [1] [e] [i]; 220.41; Matter of Roballo v Smith, 63 NY2d 485, 487-488 [1984]). Our reversal of that conviction renders the statutory cap applicable and thus limits the aggregate term of defendant's sentences. As so limited, and in view of defendant's extensive criminal history,

we find no abuse of discretion or extraordinary circumstances warranting any modification (see People v Battistini, 306 AD2d 636, 639 [2003], lv denied 1 NY3d 568 [2003]).

Egan Jr., Lynch, Devine and Clark, JJ., concur.


ORDERED that the judgment is modified, on the law and the facts, by reversing defendant's convictions of criminal sale of a controlled substance in the second degree and conspiracy in the second degree under counts 112 and 194 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court