■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY J. PIERCE, Appellant. [964 NYS2d 307]—

---

* Unless expressly provided, all statutes that apply to an indictment also apply to an SCI (*see* CPL 200.10, 200.15).

Egan Jr., J. Appeal from a judgment of the County Court of Chenango County (Sullivan, J.), rendered December 16, 2011, upon a verdict convicting defendant of the crime of burglary in the second degree.

Defendant was indicted and charged with burglary in the second degree in connection with an incident that occurred at a residence located at 22 Beebe Avenue in the Town of Norwich, Chenango County. At the conclusion of a two-day jury trial, defendant was convicted as charged and thereafter was sentenced as a second felony offender to six years in prison followed by five years of postrelease supervision. Defendant now appeals, contending only that the jury's verdict is not supported by legally sufficient evidence.

In reviewing defendant's legal sufficiency claim, we must determine whether the evidence, viewed in the light most favorable to the People, could lead a rational trier of fact to conclude that each and every element of the charged crime had been proven beyond a reasonable doubt (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Jackson*, 2 AD3d 893, 895-896 [2003], *lv denied* 1 NY3d 629 [2004]). As is relevant here, a person is guilty of burglary in the second degree when he or she "knowingly enters or remains unlawfully in a building with [the] intent to commit a crime therein" and "[t]he building [in question] is a dwelling" (Penal Law § 140.25 [2]; *see People v Merritt*, 96 AD3d 1169, 1171 [2012], *lv denied* 19 NY3d 1027 [2012]). The intent element may be inferred from, among other things, "the intruder's unlawful entry, unexplained presence on the premises, and actions and statements when confronted by police or the property owner" (*People v Ostrander*, 46 AD3d 1217, 1218 [2007]; *see People v Caston*, 60 AD3d 1147, 1149 [2009]).

At trial, a witness who lived four houses down and across the street from 22 Beebe Avenue testified that, sometime after 12:30 p.m. on the afternoon in question, she observed defendant (whom she had known for four or five years) and Daniel Sabines (whom she had known for approximately 20 years) walking down the north side of Beebe Avenue. The witness spoke to Sabines, and Sabines returned her greeting. Although defendant and Sabines purportedly were going door to door collecting signatures for a local political candidate, the witness testified that neither of them asked her to sign a petition on the candidate's behalf. Another neighbor, who lived approximately 40 feet from 22 Beebe Avenue, testified that at approximately 12:35 p.m. that day, she observed two young men—one of whom

she later identified as defendant—walking past her open window. According to this witness, these individuals appeared to be "out of place," and she took note of them because they were not talking to one another; instead, they were "very quietly looking around" the neighborhood. Although this witness made direct eye contact with defendant, neither he nor Sabines asked her to sign a petition, and she did not observe any petitions in their respective hands.

Additionally, the owner of 22 Beebe Avenue testified that while he was resting in an upstairs bedroom, he heard a noise and, upon investigating, discovered an individual—later identified as Sabines—rummaging through his belongings. Once confronted, Sabines fled the house via the back door and the homeowner gave chase. When the homeowner reached the street, he asked a nearby work crew if they had seen anyone running from the house. One of the workers indicated that he had seen a man—clad in shorts and a shirt—jump out of a window on the second floor of the house, dart across the roof, leap to the ground and take off running, leading the homeowner to conclude that there had been two intruders.

Defendant was apprehended in the parking lot of the former P & C supermarket within minutes of the homeowner's 911 call and, according to the police officer who took him into custody, admitted to being with Sabines in the general vicinity of the crime.[1] Defendant thereafter was transported back to Beebe Avenue for a show-up identification and, although the construction worker could not identify defendant as the person he saw emerge from the second-story window of 22 Beebe Avenue, he advised the police that both defendant and the man he saw running from that address were wearing "the right type of clothes," i.e., "shorts and a shirt." Finally, one of the investigators testified that Sabines sent defendant a text shortly before the two of them were apprehended asking, "Where are you?"

Viewing this evidence in the light most favorable to the People, we are satisfied that there is a "valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion reached by the jury" (*People v Bleakley*, 69 NY2d at 495), i.e., that defendant was the second intruder—notwithstanding certain inconsistencies in the trial testimony regarding the clothing worn by defendant on the day in question and/or the worker's description of the individual he saw fleeing the residence (*see generally People v Haile M.*, 160 AD2d

---

**1.** A short time later, another officer observed Sabines exiting the door of the same supermarket and took him into custody.

1027, 1027 [1990], *lv denied* 76 NY2d 860 [1990]).[2] As we are satisfied that the jury's verdict is supported by legally sufficient evidence, the judgment of conviction is affirmed.

Rose, J.P., Lahtinen and McCarthy, JJ., concur. Ordered that the judgment is affirmed.

---

2. Although the indictment alleged that defendant was acting in concert with Sabines, "there is no legal distinction between liability as a principal or criminal culpability as an accomplice" (*People v Rivera*, 84 NY2d 766, 769 [1995]) and, therefore, the People could offer proof as to either theory at trial (*cf. People v Robinson*, 53 AD3d 681, 683-684 [2008], *lv denied* 11 NY3d 794 [2008]).