*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: June 11, 2015                    105594
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

SCOTT BRIGGS,
                        Appellant.
_____

Calendar Date: April 27, 2015

Before: McCarthy, J.P., Lynch, Devine and Clark, JJ.

_____

        John A. Cirando, Syracuse, for appellant.

        Alexander Lesyk, Special Prosecutor, Norwood, for
respondent.

_____

Clark, J.

        Appeal from a judgment of the County Court of St. Lawrence
County (Richards, J.), rendered October 22, 2012, upon a verdict
convicting defendant of the crimes of burglary in the second
degree and criminal obstruction of breathing or blood
circulation.

        In February 2011, defendant entered the home of his ex-
girlfriend, Stephanie Sawyer, by picking a locked door with a
store-loyalty card. Sawyer, Robert Rathbun — Sawyer's then-
boyfriend — and two others were present in the home at the time
and, when Rathbun attempted to intervene in an argument between
defendant and Sawyer, defendant grabbed Rathbun by the throat and
choked him. Sawyer summoned the police, who arrived a short time
later and apprehended defendant while he sat in his vehicle

parked in Sawyer's driveway. Defendant was thereafter indicted on the charges of burglary in the second degree and criminal obstruction of breathing or blood circulation. After a jury trial, defendant was convicted as charged and was sentenced, as a second felony offender, to an aggregate prison term of five years with five years of postrelease supervision. Defendant now appeals and we affirm.

As an initial matter, defendant's arguments regarding the legal sufficiency of the People's evidence are largely unpreserved inasmuch as he failed to make a specific motion to dismiss the criminal obstruction of breathing or blood circulation count at the close of the People's evidence (see People v Hawkins, 11 NY3d 484, 492 [2008]) and he only addressed the insufficiency of the proof relating to the element of intent when seeking dismissal of the burglary count (see Penal Law § 140.25 [2]; People v Gray, 86 NY2d 10, 19 [1995]; People v Heyliger, 126 AD3d 1117, 1118 [2015]). In any event, as per defendant's request, we remain obligated to conduct a weight of the evidence review for both of the charged crimes, which "necessarily involves an evaluation of whether all elements of the charged crime[s] were proven beyond a reasonable doubt at trial" (People v Robinson, 123 AD3d 1224, 1225 [2014] [internal quotation marks and citations omitted], lvs denied 25 NY3d 992, 993 [2015]; see People v Danielson, 9 NY3d 342, 348-349 [2007]).

As relevant here, to convict defendant of burglary in the second degree, the People were required to prove that defendant "knowingly enter[ed] or remain[ed] unlawfully in a building with intent to commit a crime therein" and that the building in question was "a dwelling" (Penal Law § 140.25 [2]). "[I]ntent may be inferred from the circumstances of the intruder's unlawful entry, unexplained presence on the premises, and actions and statements when confronted by police or the property owner" (People v Ostrander, 46 AD3d 1217, 1218 [2007]; accord People v Sabines, 121 AD3d 1409, 1410 [2014]). Thus, the People were not required to prove that defendant had the intent to commit a particular crime when entering or while remaining in Sawyer's home (see People v Mackey, 49 NY2d 274, 279 [1980]). Further, in order to sustain a conviction of criminal obstruction of breathing or blood circulation, the People had to show that

defendant "applie[d] pressure on the throat or neck" of a person "with intent to impede the normal breathing or circulation of the blood of [such] person" (Penal Law § 121.11 [a]).  Again, defendant's intent may be inferred from the surrounding circumstances (see People v Carte, 113 AD3d 191, 195 [2013], lv denied 23 NY3d 1035 [2014]).

To prove their case, the People presented, among other things, the testimony of Sawyer and Rathbun, both of whom testified that, when they saw defendant's vehicle pull into the driveway on February 22, 2011, Sawyer turned off the lights in the house, locked the doors and hid in the bathroom along with Rathbun.  While looking out the bathroom window, Rathbun and Sawyer watched defendant walk to the back door and knock repeatedly, and they then heard the locked door open, saw the lights come on and heard defendant walking around the house.  After a time, Sawyer left the bathroom to confront defendant and an argument ensued, during which Sawyer directed defendant to leave.  Defendant refused and made threatening inquiries into the whereabouts of Rathbun.  Upon hearing defendant's comments and the sound of someone being slammed against a wall,[1] Rathbun exited the bathroom, confronted defendant and likewise demanded that he leave the house.  Both Sawyer and Rathbun testified that defendant again refused to leave and, after a brief, heated verbal exchange between the two men, defendant charged Rathbun and grabbed him by the throat.  Rathbun thereafter had difficulty breathing and, later, trouble swallowing.  Photographs admitted into evidence depict bruising on Rathbun's neck.  Defendant admitted to Sawyer that he entered her home without her permission by picking the lock with a credit-card type card, which the police officer who responded to the scene found in defendant's possession.  Over defendant's objection, Sawyer testified that this was not the first time that defendant had attempted to enter her house in such a manner as he had likewise done so roughly two months earlier.  On cross-examination, Sawyer acknowledged that, during the incident at issue herein, defendant repeatedly stated that he just wanted to talk to her.

---

[1]  Although Rathbun initially thought defendant had pushed Sawyer against the wall, that was not the case.

Starting with the limited issue of whether the People presented legally sufficient evidence to support the intent element of burglary in the second degree, "'we view the evidence in the light most favorable to the People and will not disturb the verdict so long as the evidence demonstrates a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury'" (People v Peters, 126 AD3d 1029, 1030 [2015], lv denied 25 NY3d 991 [2015], quoting People v Peryea, 68 AD3d 1144, 1146 [2009], lv denied 14 NY3d 804 [2010]; see People v Pierce, 106 AD3d 1198, 1199 [2013]).  The testimony from Rathbun and Sawyer regarding defendant's unprompted, threatening comments toward Rathbun and the subsequent altercation between the two men — which defendant initiated — constituted legally sufficient evidence that defendant intended to commit a crime when he unlawfully entered Sawyer's home (see People v Judware, 75 AD3d 841, 844-845 [2010], lv denied 15 NY3d 853 [2010]; People v Ostrander, 46 AD3d at 1218; People v Rivera, 301 AD2d 787, 789 [2003], lv denied 99 NY2d 631 [2003]; compare People v Green, 24 AD3d 16, 18-19 [2005]).  Further, although a different verdict would not have been unreasonable, after considering the evidence in a neutral light and according the appropriate deference to the jury's credibility determinations, we conclude that the verdict on the burglary count is not against the weight of the evidence (see People v Danielson, 9 NY3d at 349; People v Bleakley, 69 NY2d 490, 495 [1987]; People v Sabines, 121 AD3d at 1410-1411; People v Peterson, 118 AD3d 1151, 1152-1153 [2014], lvs denied 24 NY3d 1087 [2014]).  Regarding the charge of criminal obstruction of breathing or blood circulation, however, no reasonable view of the evidence — i.e., Rathbun's uncontradicted testimony that defendant choked him and the photographs of Rathbun's bruised throat — would allow a jury to acquit defendant of that crime and, thus, a full review of the evidence is unnecessary (see People v Bleakley, 69 NY2d at 495).

Despite defense counsel's concession at the Molineux hearing that defendant entered Sawyer's residence without her permission on the night in question, we find no error in County Court's determination that the People could inquire into defendant's prior use of a credit-card type card to pick the lock on Sawyer's home for the purpose of showing an absence of mistake

(see People v Molineux, 168 NY 264, 293 [1901]; People v Rivera, 124 AD3d 1070, 1073 [2015]; People v Anderson, 114 AD3d 1083, 1085 [2014], lv denied 22 NY3d 1196 [2014]).  Contrary to defendant's contention, the pre-Molineux informal concession by his counsel of an unlawful entrance into Sawyer's home on the night in question does not prohibit the People from nonetheless seeking to present relevant evidence regarding each element of the crimes charged.  Inasmuch as the People are under no legal obligation to consent to a formal stipulation regarding an element of a charged offense (see People v White, 79 AD3d 1460, 1463 [2010], lvs denied 17 NY3d 791, 803 [2011]; see also People v Hills, 140 AD2d 71, 77 [1988], lv denied 73 NY2d 855 [1988]), they certainly cannot be made to accept a defense counsel's informal assurance that he will not contest an element of the crime at trial.  Thus, inasmuch as County Court allowed the testimony for a proper purpose, appropriately balanced its probative value against its prejudicial effect, and issued limiting instructions to the jury as soon as the People's line of questioning was complete and again during its charge to the jury, we discern no error in County Court's determination (see People v Anderson, 114 AD3d at 1085-1086; People v Johnson, 106 AD3d 1272, 1274 [2013], lvs denied 21 NY3d 1043, 1045, 1046 [2013]).

McCarthy, J.P., Lynch and Devine, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court