Aarons, J.
Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered January 31, 2014, upon a verdict convicting defendant of the crimes of murder in the first degree, murder in the second degree (two counts), burglary in the second degree, arson in the third degree, grand larceny in the second degree and insurance fraud in the second degree (two counts).
This appeal arises from a December 2008 incident where defendant killed his estranged wife (hereinafter the victim) and burned her house to the ground. An initial investigation of the victim’s death did not lead to criminal charges against defendant inasmuch as defendant’s then girlfriend[1] provided an alibi for defendant and the victim’s death was deemed accidental. Years later, however, the girlfriend confessed to law enforcement that her alibi was fabricated and that defendant killed the victim. In October 2012, defendant was charged in a multi-count indictment with murder in the first degree, murder in the second degree (two counts), burglary in the second degree, arson in the third degree, grand larceny in the second degree and insurance fraud in the second degree (two counts). After a lengthy jury trial, defendant was found guilty on all counts. County Court thereafter sentenced defendant to a controlling term of life in prison without parole. Defendant appeals. We affirm.
Defendant challenges the legal sufficiency of the evidence as it pertains to the charge of burglary in the second degree (count four) on the basis that he was privileged to enter the marital residence. To that end, defendant contends that because the charge for burglary in the second degree cannot stand, the charge of murder in the first degree (count one) and the felony murder charge (count three) should likewise be dismissed. These legal sufficiency arguments, however, are unpreserved for review in the absence of a trial motion to dismiss premised on the specific grounds now being raised on appeal (see People v Andrews, 127 AD3d 1417, 1419 [2015], lv denied 25 NY3d 1159 [2015]).
*1354 Defendant also contends that the conviction for murder in the second degree (count two) was not supported by legally sufficient evidence. Under a legal sufficiency analysis, “we determine whether, viewing the evidence in a light most favorable to the People, the People established its burden of proving each element of the charged crime beyond a reasonable doubt” (People v Green, 121 AD3d 1294, 1294 [2014] [citations omitted], lv denied 25 NY3d 1164 [2015]; see People v Taylor, 134 AD3d 1165, 1166 [2015], lv denied 26 NY3d 1150 [2016]). As relevant here, a defendant is guilty of murder in the second degree if he or she causes the death of a person with the intent to do so (see Penal Law § 125.25 [1]).
In light of defendant’s further assertion that the conviction for murder in the second degree (count two) is against the weight of the evidence and, to the extent that defendant raises a similar contention with respect to the convictions only for murder in the first degree (count one) and burglary in the second degree (count four), we review the evidence adduced as to each element of the crime for which defendant was convicted and, where a contrary result would not have been unreasonable, we “weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony” (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; People v Ackerman, 141 AD3d 948, 949 [2016]; People v Briggs, 129 AD3d 1201, 1202 [2015], lv denied 26 NY3d 1038 [2015]).
The trial evidence reveals that defendant and the victim, with whom he had two children, separated in January 2008. They owned a house in Sullivan County but, according to the separation agreement, the victim was given sole occupancy of it. The separation agreement also provided that “[n] either party will attend the other’s home . . . without invitation or approval.” In September 2008, defendant and his girlfriend started living together in Nassau County. Around the same time, defendant’s relationship with the victim significantly deteriorated and the girlfriend testified that defendant told her that “he needed to kill [the victim].” Defendant’s coworker likewise testified that defendant expressed similar thoughts to him to the effect of “putting her out of the picture” and, in early December 2008, defendant told his coworker that he wanted him to go with him to the victim’s house and “take care” of her.
The girlfriend testified that a week before the incident in question, she went with defendant to the victim’s house to *1355 move some of defendant’s personal items from out of the basement. She further stated that defendant wanted to leave the Bilco doors leading to the basement unlocked so that he could gain access into the house, and that his plan was to use chloroform on the victim to knock her out, light the victim’s house on fire and have her die of carbon monoxide poisoning so that her death would seem like an accident. On the night of December 12, 2008, defendant made the chloroform, which he researched how to do through an Internet search. Defendant’s children, who were in Nassau County at the time pursuant to a custody arrangement, were given Benadryl to ensure that they slept through the night. Defendant’s coworker arrived and the girlfriend stated that defendant left his cell phone in Nassau County to avoid being tracked.
Defendant’s coworker testified that he drove with defendant to Sullivan County in a vehicle registered to the coworker’s girlfriend. According to the coworker, defendant told him not to bring an E-ZPass tag. While en route, defendant and his coworker stopped at a Walmart where defendant purchased duct tape and gloves.[2] The coworker stated that, upon arrival in Sullivan County, defendant exited the vehicle, put on scrubs and the gloves and taped his wrists and ankles. Defendant proceeded to the victim’s house while the coworker remained in the vehicle. Defendant returned approximately 45 to 55 minutes later and told the coworker, “It’s done.” Defendant informed his coworker that the chloroform did not work and that he strangled her. They waited for approximately 5 to 10 minutes when defendant exclaimed that the fire had not started. Defendant went back to the victim’s house and, after returning to his coworker, defendant said, “It’s now lit.” Defendant and his coworker drove back to Nassau County by taking a different route than how they drove up to Sullivan County. The coworker further stated that they stopped at an abandoned gas station where defendant got rid of the gloves, duct tape and scrubs. When they approached New York City, they traversed the lower level of the George Washington Bridge.[3]
The girlfriend testified that, upon defendant’s arrival back in Nassau County, defendant told her that the victim was dead and she noticed a long scratch on defendant’s neck that was *1356 not there when he left the previous evening. She learned from defendant that he had entered the victim’s house through the Bilco doors, but that the dog started barking and the victim spotted defendant. Defendant tried to use the chloroform on the victim but it did not work. The girlfriend further testified that defendant told her that he and the victim had a “difficult struggle” for approximately 45 minutes and that the victim begged for her life. Defendant ultimately used the hood of the victim’s sweatshirt to strangle her. Defendant waited until the victim stopped breathing to ensure that she died. Defendant then obtained a blowtorch from the garage and set the house on fire.
In addition to the girlfriend’s testimony and that of defendant’s coworker, the People adduced proof of defendant’s financial problems, how defendant fraudulently obtained monetary proceeds from the victim’s life insurance policies and how defendant personally spent such proceeds even though some of it was paid for the benefit of the children. An arson investigator testified that he thought the fire was suspicious and concluded that the victim was dragged to her position where she was ultimately discovered. There was testimony from a pathologist indicating that the victim died from asphyxia. The low carbon monoxide levels in the victim’s blood and the lack of soot in her airways also suggested that the victim died prior to the fire. Based on the foregoing and viewing the evidence in a light most favorable to the People, we find that there was legally sufficient evidence to support the conviction for murder in the second degree as charged in count two of the indictment (see People v Stanford, 130 AD3d 1306, 1308 [2015], lv denied 26 NY3d 1043 [2015]).
We are also satisfied that the conviction for murder in the second degree was in accord with the weight of the evidence. While defendant challenges the credibility of his girlfriend and coworker based upon their mental health issues, such issues, as well as the benefits they received in exchange for testifying against defendant, were fully explored at trial. Contrary to defendant’s contention, any inconsistencies between the accounts provided by defendant’s girlfriend and his coworker did not render their testimony incredible as a matter of law, but instead presented a credibility issue for the jury’s resolution (see People v Gunn, 144 AD3d 1193, 1194 [2016], lv denied 28 NY3d 1145 [2017]; People v Gamble, 135 AD3d 1078, 1079 [2016], lv denied 27 NY3d 997 [2016]). According deference to the jury’s assessment of the credibility of the witnesses, we conclude that the verdict convicting defendant of murder in the *1357 second degree (count two) was not against the weight of the evidence (see People v Wlasiuk, 136 AD3d 1101, 1102 [2016], lv denied 27 NY3d 1009 [2016]; People v Griffin, 128 AD3d 1218, 1220 [2015], lv denied 27 NY3d 998 [2016]; People v Rodriguez, 121 AD3d 1435, 1441 [2014], lv denied 24 NY3d 1122 [2015]).
To the extent that defendant contends that the conviction for murder in the first degree was against the weight of the evidence with respect to the intent element, we find such contention to be without merit. The People’s theory was, and the trial evidence demonstrates, that defendant’s intent to commit a crime for the purpose of the burglary in the second degree charge was separate and apart from the intent to kill the victim. In this regard, for the burglary in the second degree charge, the People satisfied the intent element by demonstrating that defendant entered the victim’s house to render her unconscious by using chloroform and then to burn down the house (cf. People v Womack, 143 AD3d 1171, 1172 [2016], lv denied 28 NY3d 1151 [2017]). Furthermore, when defendant’s use of chloroform did not work, as discussed, the People, through the testimony of defendant’s girlfriend, his coworker and his coworker’s girlfriend, demonstrated that defendant strangled the victim with the intent to cause her death (see People v Cherry, 46 AD3d 1234, 1236-1237 [2007], lv denied 10 NY3d 839 [2008]). As such, we are satisfied that the conviction for murder in the first degree (count one) was supported by the weight of the evidence.
To the extent that defendant argues that the conviction for burglary in the second degree (count four) was against the weight of the evidence because he was privileged to enter the victim’s house, the trial evidence reveals that after defendant and the victim separated, the victim had her friend change the locks to the house and defendant had not resided there for almost one year. Moreover, not only did the separation agreement give the victim the right of sole occupancy of the house, it also required that defendant have the victim’s consent before he entered the house. Under these circumstances, even though defendant co-owned the house and was still legally married to the victim, “an owner can properly be convicted of burglarizing premises he [or she] owns but which are occupied by another” (People v Glanda, 5 AD3d 945, 950 [2004], lv denied 3 NY3d 640 [2004], cert denied 543 US 1093 [2005]). Accordingly, we conclude that the conviction for burglary in the second degree was supported by the weight of the evidence.
We reject defendant’s argument that the testimony of his girlfriend and coworker was not sufficiently corroborated. Cor *1358 roborative evidence is sufficient “if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice[s] [are] telling the truth” (People v Reome, 15 NY3d 188, 192 [2010] [internal quotation marks and citation omitted]; see People v Miles, 119 AD3d 1077, 1079 [2014], lv denied 24 NY3d 1003 [2014]). Here, in addition to the medical evidence demonstrating that the victim died prior to the fire, there was documentary evidence of a Walmart receipt reflecting the purchase of gloves and duct tape and an E-ZPass account statement showing that the vehicle used by defendant crossed the George Washington Bridge during the morning of December 13, 2008. Corroboration also came from the statements and testimony of the girlfriend of defendant’s coworker, who stated that, a week after the incident, defendant admitted to her that he had a struggle with the victim and that he set the house on fire. Based on the foregoing, we find no merit in defendant’s corroboration argument (see People v Malak, 117 AD3d 1170, 1172-1173 [2014], lv denied 24 NY3d 1086 [2014]; People v Berry, 78 AD3d 1226, 1227 [2010], lv denied 16 NY3d 828 [2011]).
Defendant’s remaining contention has been examined and is found to be without merit.
Garry, J.P., Egan Jr., Devine and Clark, JJ., concur.
Ordered that the judgment is affirmed.

. The relationship between defendant and his then girlfriend ended around February 2011.

. A Walmart receipt showing a purchase of duct tape and gloves was admitted into evidence.

. The coworker testified that, because of construction, there were no toll booth operators and drivers were advised that they would be billed for the toll through E-ZPass.