People v Stetin (2018 NY Slip Op 08716)





People v Stetin


2018 NY Slip Op 08716


Decided on December 20, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 20, 2018

109738

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
CHRISTOPHER M. STETIN, Appellant.

Calendar Date: November 19, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Devine and Clark, JJ.


Matthew C. Hug, Albany, for appellant.
Kelli P. McCoski, District Attorney, Fonda (Pamela A. Ladd of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered September 29, 2017, upon a verdict convicting defendant of the crimes of burglary in the second degree and assault in the second degree.
Following allegations that, in the early morning hours of September 25, 2016, defendant unlawfully entered the home of his then-girlfriend and beat her, defendant was indicted on charges of burglary in the second degree, assault in the second degree and criminal mischief in the fourth degree. After discovery,[FN1] the matter proceeded to a jury trial, during which defense counsel successfully argued for dismissal of the charge of criminal mischief in the fourth degree. The remaining charges of burglary in the second degree and assault in the second degree were ultimately submitted to the jury, which found defendant guilty of both crimes. County Court thereafter denied defendant's CPL 330.30 (1) motion to set aside the verdict and sentenced defendant to an aggregate prison term of four years, followed by five years of postrelease supervision. Defendant now appeals, and we affirm.
Beginning with defendant's claim that his conviction for assault in the second degree was not supported by legally sufficient evidence and was against the weight of the evidence, such a conviction requires proof that, "[w]ith intent to cause serious physical injury to another person, [the defendant] cause[d] such injury to such person" (Penal Law § 120.05 [1]). As relevant here, serious physical injury is defined as "physical injury . . . which causes . . . protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]).
At trial, the victim, the victim's mother and the victim's friend all testified that, on the afternoon before the incident, defendant had been at the victim's home, that he was angry because the victim had been in contact with her ex-husband and that, after being asked to leave several times, he eventually left. The victim stated that, many hours later, between 2:00 a.m. and 3:00 a.m., she awoke to defendant standing over her bed. She testified that, as he directed various insults and offensive comments at her, defendant pulled her out of bed, picked her up and "slammed" her on the bedroom floor, which she claimed broke her "shoulder." The victim thereafter described a prolonged attack that included defendant spitting on her, knocking her unconscious, repeatedly kicking her in the legs and feet and hitting her several times in the head and face. The victim stated that, once defendant fell asleep, she called her mother, who immediately came over and forced defendant out of the victim's home. The mother described the victim as having matted hair, red eyes from crying and redness on her neck, and also stated that the victim appeared to have trouble walking. The responding police officers similarly testified that the victim appeared to have difficulty moving and they observed bruising on the victim's body, including on her left shoulder, arms, neck, legs and abdomen. One of the police officers further testified that various items in the victim's room, including a lamp, were knocked over, the mattress was lying "crooked" on the bed and the sheets were in disarray. The victim's testimony and her medical records demonstrated that, more than three weeks after the incident, she sought medical treatment and was determined to have a fractured left clavicle, which ultimately required two surgeries — the first being an open reduction and internal fixation requiring screws, a plate and wires and the second being the removal of the inserted hardware four months later. To refute the victim's claim that defendant had broken her clavicle during the incident, defendant presented testimony from a convenience store clerk who stated that she saw the victim carry two 18-packs of beer shortly after the incident occurred.
Defendant argues that the victim's testimony was incredible as a matter of law because it included "sensational" and "uncorroborated" allegations, which were neither included in the victim's statement to the police nor substantiated by the third-party testimony or the medical records. However, the victim's account was corroborated in many respects by the medical records and testimony from the responding police officers and the victim's mother, including their observations of the victim immediately after the attack. Contrary to defendant's contentions, the victim's testimony "was neither contradicted by any compelling evidence nor so unworthy of belief as to be incredible as a matter of law" (People v Cridelle, 112 AD3d 1141, 1143 [2013] [internal quotation marks and citations omitted]; see People v Fernandez, 106 AD3d 1281, 1285 [2013]; People v Newell, 290 AD2d 652, 654 [2002], lv denied 98 NY2d 712 [2002]). Any testimony from the victim that was not included in her statement to police, or was perceived by defense counsel to be sensationalized, was explored at trial and presented a credibility issue for the jury to resolve (see People v St. Ives, 145 AD3d 1185, 1187 [2016], lv denied 29 NY3d 1036 [2017]; People v Ramirez, 118 AD3d 1108, 1111 [2014]). Considering the evidence in the light most favorable to the People (see People v Jones, ___ AD3d ___, ___, 2018 NY Slip Op 08058, *1 [2018]), we find a valid line of reasoning and permissible inferences from which a rational jury could conclude that defendant caused a protracted impairment of the victim's health and intended to do so (see Penal Law §§ 10.00 [10]; 120.05 [1]; People v Graham, 297 AD2d 579, 579-580 [2002], lv denied 99 NY2d 535 [2002]; People v Mohammed, 162 AD2d 367, 367 [1990], lv denied 76 NY2d 861 [1990]; cf. People v Kern, 75 NY2d 638, 658 [1990], cert denied 498 US 824 [1990]; People v Hilton, ___ AD3d ___, ___, 2018 NY Slip Op 07981, *2 [2018]). Further, although it would not have been unreasonable for the jury to have resolved the credibility issues differently in this case and reached an opposite conclusion, we find that defendant's conviction for assault in the second degree is not against the weight of the evidence (see People v Hilton, 2018 NY Slip Op 07981 at *2; People v Brabant, 61 AD3d 1014, 1015-1016 [2009], lv denied 12 NY3d 851 [2009]; People v Roman, 19 AD3d 739, 740 [2005], lv denied 5 NY3d 809 [2005]).
We turn next to defendant's challenge to the weight and legal sufficiency of the evidence supporting his conviction of burglary in the second degree. As that crime was charged in this case, the People were required to prove that defendant "knowingly enter[ed]" the victim's home unlawfully with the "intent to commit a crime therein" and that, while in the victim's home, [*2]he "[c]aused physical injury to" the victim (Penal Law § 140.25 [1] [b]). Defendant specifically argues that the evidence was legally insufficient to establish that his entry into the victim's home was unlawful or that he entered with the intent to commit a crime. On these points, entry into a victim's home is unlawful if the defendant does not have a license or privilege to enter (see Penal Law § 140.00 [5]), and a defendant's intent may be properly inferred from, among other things, the circumstances of the entry, his or her unexplained presence in the building and his or her actions and statements while on the premises (see People v Lara, 130 AD3d 463, 464 [2015], lv denied 27 NY3d 1001 [2016]; People v Pierce, 106 AD3d 1198, 1199 [2013]; People v Bibbes, 98 AD3d 1267, 1269 [2012], lv denied 20 NY3d 931 [2012]).
The victim unequivocally testified that she and defendant did not live together, that defendant did not have a key to her apartment and that, although defendant would sleep over a few nights a week, he had not been invited on the night in question. She stated that, after defendant was asked to leave her home, she did not have any further contact with him that evening and that the door to her home had been locked when she went to bed. She further testified that the window next to her back door was broken and that defendant had previously witnessed her lift the window, reach around and unlock the back door. Testimony from both of the responding police officers established that, upon their arrival on the scene, they observed the back window to be open and the back door to be unlocked. The foregoing evidence, viewed in the light most favorable to the People, was legally sufficient to establish that defendant knowingly and unlawfully entered the victim's home (see People v Jackson, 151 AD3d 1466, 1468 [2017], lv denied 30 NY3d 950 [2017]; People v Hunter, 55 AD3d 1052, 1053 [2008], lv denied 11 NY3d 898 [2008]). Furthermore, defendant's criminal intent may be reasonably inferred from the circumstances of defendant's unlawful entry into the victim's home, including the time at which he did so, the victim's testimony regarding his actions and statements after he entered and the medical and testimonial evidence establishing the victim's physical injuries (see People v Womack, 143 AD3d 1171, 1171-1172 [2016], lv denied 28 NY3d 1151 [2017]; People v Lara, 130 AD3d at 463-464). Accordingly, we find that defendant's conviction for burglary in the second degree is supported by legally sufficient evidence and, although a different conclusion would not have been unreasonable, is not against the weight of the credible evidence (see People v Jackson, 151 AD3d 1466, 1468 [2017], lv denied 30 NY3d 950 [2017]; People v Briggs, 129 AD3d 1201, 1204 [2015], lv denied 26 NY3d 1038 [2015]).
Defendant further argues, based on several alleged deficiencies in his legal representation, that he received ineffective assistance of counsel under both the US and NY Constitutions. We disagree. Under the NY Constitution, which affords greater protection to a defendant than the US Constitution, an ineffective assistance of counsel claim will fail where "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Honghirun, 29 NY3d 284, 289 [2017] [internal quotation marks and citations omitted]; see People v King, 27 NY3d 147, 158 [2016]). By comparison, to prevail on an ineffective assistance of counsel claim under the US Constitution, "a defendant must demonstrate that (1) his or her attorney committed errors so egregious that he or she did not function as counsel within the meaning of the [US] Constitution, and (2) that counsel's deficient performance actually prejudiced the defendant" (People v Gross, 26 NY3d 689, 693 [2016]; see Strickland v Washington, 466 US 668, 687-688 [1984]). Importantly, "[a] defendant's criticisms of counsel must amount to more than 'a simple disagreement with [counsel's] strategies, tactics or the scope of possible cross-examination'" (People v Ildefonso, 150 AD3d 1388, 1388 [2017], lv denied 30 NY3d 980 [2017], quoting People v Flores, 84 NY2d 184, 187 [1994]).
Defendant primarily takes issue with defense counsel's cross-examination of the victim. Although defense counsel certainly could have more forcefully cross-examined the victim by challenging her on testimony that was not reflected in her statement to the police or confronting her with certain prior inconsistent statements, we cannot conclude that defense counsel lacked a strategic reason or other legitimate explanation for the manner in which he cross-examined the victim (see People v Foulkes, 117 AD3d 1176, 1177 [2014], lv denied 24 NY3d 1084 [2014]; People v Terry, 85 AD3d 1485, 1488 [2011], lv denied 17 NY3d 862 [2011]; compare People v [*3]Taylor, 156 AD3d 86, 93 [2017], lv denied 30 NY3d 1120 [2018]). Defense counsel was able to establish through his cross-examination of one of the responding police officers that the victim did not mention certain facts in her police statement that she had testified to at trial (see People v Terry, 85 AD3d at 1488; People v Horton, 79 AD3d 1614, 1616 [2010], lv denied 16 NY3d 859 [2011]). In addition, as part of an overall defense contesting the victim's credibility, defense counsel argued during closing argument that those facts to which the victim testified, but were omitted from her statement, were not of the type to be left out of one's statement to police, had they in fact occurred (see People v Terry, 85 AD3d at 1488). Furthermore, defense counsel presented two witnesses, whose testimony served to raise doubt as to the victim's credibility.
In addition, we cannot conclude that defense counsel lacked a strategic reason or other legitimate explanation for stipulating to the admission of the victim's unredacted medical records into evidence. The People expressed an intention to otherwise introduce the records through the testimony of the victim's doctor, and County Court likely would have ruled that the statements that defendant now argues should have been redacted were relevant to the victim's diagnosis and treatment and, thus, admissible (see People v Ortega, 15 NY3d 610, 617-619 [2010]; People v Barnes, 140 AD3d 443, 443 [2016], lv denied 28 NY3d 969 [2016]). Further, despite defense counsel's failure to request an adverse inference charge regarding photographs that were lost or destroyed by the police (see generally People v Wheeler, 124 AD3d 1136, 1139-1140 [2015], lv denied 25 NY3d 993 [2015]), upon considering the circumstances of the case and a review of the totality of defense counsel's representation, this single error did not deprive defendant of meaningful representation (see People v Kluss, 143 AD3d 1281, 1282 [2016], lv denied 28 NY3d 1147 [2017]). Among other things, defense counsel gave cogent opening and closing statements, lodged numerous successful objections, conducted pointed direct and cross-examinations and argued successfully for the dismissal of the criminal mischief charge (see People v Sands, 157 AD3d 1136, 1138 [2018], lv denied 31 NY3d 986 [2018]; People v Ramos, 133 AD3d 904, 909 [2015], lvs denied 26 NY3d 1143, 1149 [2016]). Accordingly, although defendant points to other alleged shortcomings, our review of the record as a whole satisfies us that defendant did not receive ineffective assistance of counsel under either the state or federal standard.
To the extent that we have not specifically addressed any of defendant's remaining contentions, they have been reviewed and determined to lack merit.
McCarthy, J.P., Egan Jr., Lynch and Devine, JJ., concur.
ORDERED that the judgment is affirmed, and matter remitted to the County Court of Montgomery County for further proceedings pursuant to CPL 460.50 (5).



Footnotes

Footnote 1: Contrary to defendant's assertion that his trial counsel did not conduct discovery, defense counsel and the prosecutor each made statements on the record regarding material that the prosecutor had turned over to defendant during "the discovery portion of this case."