People v Spencer (2019 NY Slip Op 01458)





People v Spencer


2019 NY Slip Op 01458


Decided on February 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 28, 2019

108969

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
SHAQUAN SPENCER, Also Known as O, Appellant.

Calendar Date: January 14, 2019

Before: Garry, P.J., Egan Jr., Lynch, Clark and Pritzker, JJ.


Adam H. Van Buskirk, Auburn, for appellant, and appellant pro se.
Andrew J. Wylie, District Attorney, Plattsburgh (Jeffrey Kehm of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from a judgment of the County Court of Clinton County (Ryan, J.), rendered September 28, 2016, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree (three counts) and conspiracy in the fourth degree.
In August 2015, police, who were searching for a missing person, entered an apartment, encountered defendant and found narcotics and a large amount of cash on his person, as well as additional drugs in the apartment. Defendant was charged with criminal possession of a controlled substance in the third degree (three counts), conspiracy in the fourth degree and criminally using drug paraphernalia. After a jury trial, defendant was acquitted of criminally using drug paraphernalia and convicted of the remaining charges. County Court sentenced him as a second felony offender to three concurrent prison terms of 10 years, followed by three years of postrelease supervision, on the convictions for criminal possession of a controlled substance in the third degree and a concurrent term of 1½ to 3 years on the conspiracy conviction. Defendant appeals.
Defendant contends that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence in that the People did not prove that he had the requisite intent to sell or that he engaged in a conspiracy. Defendant failed to preserve his legal sufficiency argument, as his general motion for a trial order of dismissal was not based on these specific claims (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Miller, 160 AD3d 1040, 1041 [2018], lv denied 32 NY3d 939 [2018]). "Nevertheless, our weight of the evidence review necessarily involves an evaluation of whether all elements of the charged crimes were proven beyond a reasonable doubt" (People v Newell, 148 AD3d 1216, 1220 [2017] [internal quotation marks and citation omitted], lv denied 29 NY3d 1035 [2017]; see People v Danielson, 9 NY3d 342, 348-349 [2007]).
The testimony of the People's witnesses established that, in August 2015, the City of Plattsburgh Police Department received a missing person report regarding Kamil Wideman, who was possibly in the area and in danger. During the search for Wideman, police were told that he was staying in a local resident's apartment. Police located the resident, who told them that Wideman and defendant were staying with her and were involved in narcotics activity, and consented to a search of her apartment. When the police arrived at the apartment, defendant was the only person there. As officers used a key to enter and announced their presence, they heard a door close; defendant was found in the bathroom with the door locked, and he flushed the toilet before exiting. A few minutes later, the police observed and photographed a white film on the water's surface.
When asked to identify himself, defendant initially provided a false name. Police directed him to take his hands out of the pockets of his sweatpants. He did so, but put one hand back into a pocket while an officer was trying to handcuff him. The officer removed defendant's hand, saw a large amount of cash in the pocket and pulled out the other pocket. Additional currency and two "bundles" — that is, plastic bags that each contained 10 smaller packages of what proved to be heroin — fell onto the floor. A total of $9,625 was found on defendant's person. Police searched the apartment, noticed an opening in the bottom of an ottoman and found two plastic bags hidden inside it containing cocaine and heroin.
The resident testified that, at the request of a certain friend, she had allowed that friend, defendant and Wideman to stay at her apartment for four days. The resident said that the three individuals brought drugs into her apartment and that she saw them preparing the drugs for sale. On the first morning of their stay, before the resident left for work, she saw the three men "getting all their stuff prepared for the day" — or, as she clarified, she saw defendant handing out supplies of heroin and cocaine to Wideman and the friend. She saw similar activity on the next two mornings, as defendant and the others "prepar[ed] the drugs to go for the day." She testified that defendant normally kept the drugs on his person but that she also saw him "going under the [ottoman]" or "unzipping the futon." She also saw Wideman and the friend giving money to defendant. On the day of defendant's arrest, which was the fourth morning of his stay in the resident's apartment, the resident saw defendant give drugs to the friend. The resident then gave the friend and Wideman a ride to Plattsburgh, leaving defendant, who had no other means of transportation, in the apartment. Before she returned to the apartment, the resident was stopped by police and provided the information that led to defendant's arrest.
The resident testified that she was a heroin addict and that defendant and Wideman had given her heroin and money in exchange for permitting them to stay in her apartment. She testified that she did not touch the drugs that were stored in her apartment, that she never saw defendant use any drugs and that there were no needle tracks on his arms. She acknowledged that she was on parole from a drug-related conviction at that time and that she cooperated with police because she was afraid of getting into trouble. She further acknowledged that she later went back to prison for a violation of her parole.
During a videotaped police interview that was played for the jury, defendant admitted that he possessed the drugs found on his person. Police obtained DNA from a soda bottle that defendant drank from during the interview and provided it to a forensic analyst, who testified that it matched DNA on the packaging of the narcotics found in the ottoman. A detective and an agent with the Drug Enforcement Administration testified, based on their experience in narcotics investigations, that drug users were not usually found with large quantities of drugs or cash and that the sum of money found on defendant's person and the amount and packaging of the drugs found in the search were consistent with drug sales and not with personal use.
If the jury had credited defendant's claim that the drugs were for personal use and that he did not intend to conspire with Wideman to sell them, a different verdict would not have been unreasonable (see People v Criss, 151 AD3d 1275, 1276 [2017], lv denied 30 NY3d 979 [2017]). Thus, this Court "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and [*2]citations omitted]). Viewing the evidence in a neutral light and deferring to the jury's credibility assessments, we find that the weight of the evidence supports the verdict (see People v Harvey, 96 AD3d 1098, 1100 [2012], lv denied 20 NY3d 933 [2012]; People v James, 90 AD3d 1249, 1250 [2011], lv denied 18 NY3d 958 [2012]).
We reject defendant's contention that County Court erred in summarily rejecting his motion to suppress physical evidence. Such a motion must be made within 45 days of the commencement of a criminal action, unless the defendant shows good cause for the delay (see CPL 255.20 [1], [3]; 710.40). Defendant's motion was made more than six months after he was arraigned and included no claim or showing of good cause for the delay. Moreover, defense counsel had previously filed a timely omnibus motion seeking other relief. The information upon which the belated suppression motion was based was available when the omnibus motion was filed, and the suppression motion did not demonstrate that "defendant did not have reasonable opportunity to make the motion previously" (CPL 710.40 [2]). Thus, summary denial was proper (see CPL 255.20 [3]; People v Jackson, 48 AD3d 891, 893 [2008], lv denied 10 NY3d 841 [2008]; People v Knowles, 12 AD3d 939, 940 [2004]).
We further reject defendant's contention that his trial counsel was ineffective in failing to make a timely suppression motion. "[A] showing that counsel failed to make a particular pretrial motion generally does not, by itself, establish ineffective assistance of counsel" (People v Rivera, 71 NY2d 705, 709 [1988]). Moreover, ineffective assistance does not result from "failure to make a motion or argument that has little or no chance of success" (People v Caban, 5 NY3d 143, 152 [2005] [internal quotation marks and citation omitted]). Our review of the trial evidence reveals that it is unlikely that a suppression motion, if made, would have been successful (see People v Garcia, 30 AD3d 833, 835 [2006]; compare People v Carnevale, 101 AD3d 1375, 1378-1381 [2012]).
Defense counsel did present a timely omnibus motion, and County Court scheduled Huntley, Dunaway and Wade hearings. On the scheduled date, defense counsel advised that defendant wished to waive the hearings in exchange for the People's agreement to hold a plea offer open for an additional two weeks. Defense counsel clarified that defendant had made this decision after discussions regarding the likely result of the pretrial hearings and the strength of the People's DNA evidence against him. The court accepted the waiver after defendant confirmed on the record that he wished to waive the hearings in exchange for additional time to consider the plea offer, that he had consulted with counsel, and that he understood the rights that he was giving up. Thus, defendant's claim that his trial counsel erred in advising him to consent to the waiver is a "simple disagreement with strategies and tactics" that does not constitute the ineffective assistance of counsel (People v Rivera, 71 NY2d at 708-709; accord People v Hare, 124 AD3d 1148, 1148-1149 [2015], lv denied 26 NY3d 929 [2015]). Viewing the law, the evidence and the circumstances in totality, we find that trial counsel provided defendant with "meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]).
Contrary to defendant's claim, County Court did not improperly permit the People to amend their theory of the case. During jury deliberations, the jury sent a note asking for clarification of the phrase "acting in concert," which appeared on the verdict sheet as part of each of the three charges of criminal possession of a controlled substance in the third degree. The court determined, in discussion with counsel, that the language had been included on the verdict sheet in error, as whether a defendant acts in concert with another is not an element of the crime of criminal possession of a controlled substance in the third degree. Defendant argued that the corresponding indictment charges alleged that defendant had acted in concert with Wideman and that removal of the language from the verdict sheet would alter the People's theory of the case, while the People asserted that they had not proceeded under a theory of accomplice liability. Over defendant's objection, the court instructed the jury to ignore the "in concert" language in determining defendant's guilt on the criminal possession charges.
"Whether a defendant is charged as a principal or as an accomplice to a crime has no bearing on the theory of the prosecution," as there is no legal distinction between criminal [*3]liability as a principal or as an accessory (People v Rivera, 84 NY2d 766, 769 [1995]). Thus, when an indictment charges that a defendant acted in concert with another, the People may offer proof of either status without expanding or altering their theory of liability (see People v Pierce, 106 AD3d 1198, 1201 n 2 [2013]). Accordingly, County Court did not err in instructing the jury to disregard the language in the verdict sheet pertaining to whether defendant acted in concert with another in determining his liability on the charges of criminal possession of a controlled substance in the third degree (see People v Mateo, 2 NY3d 383, 408-409 [2004]; People v Rivera, 84 NY2d at 769; People v Kowal, 159 AD3d 1346, 1347 [2018]; People v Charles, 124 AD3d 986, 988 [2012], lvs denied 25 NY3d 950, 952 [2015]).
Finally, we reject defendant's claim that his sentence is harsh and excessive. In view of his criminal history, which includes prior out-of-state convictions for felonies related to the sale and distribution of drugs, as well as other offenses such as identity theft and grand larceny, we perceive no abuse of discretion or extraordinary circumstances warranting modification of the sentence in the interest of justice (see People v Arce-Santiago, 154 AD3d 1172, 1175 [2017], lv denied 30 NY3d 1113 [2018]; People v Hawkins, 130 AD3d 1298, 1305 [2015], lv denied 26 NY3d 968 [2015]).
Egan Jr., Lynch, Clark and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.